NEWPORT TRIAL GROUP
Scott J. Ferrell, Bar No. 202091
Ryan M. Ferrell, Bar No. 258037
610 Newport Center Drive, Suite 700
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469
*Attorneys for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

GINA DELAROSA, individually, and on behalf of all others similarly situated,

       Plaintiffs,

       vs.

BOIRON, INC., et al.,

       Defendants.

Case No.  SACV 10-1569-JST (CWx)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS;  MEMORANDUM OF POINTS AND AUTHORITIES**

Date:        February 28, 2011
Time:        10:00 a.m.
Judge:      Hon. Josephine Staton Tucker
Courtroom:   10A

Complaint Filed:  August 31, 2010
Trial Date:      December 6, 2011

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION……………………………………………………… 1

II.  STATEMENT OF FACTS……………………………………… 4

III.  ARGUMENT…………………………………………………… 4

   A.  PLAINTIFF'S CLAIMS ARE NOT PREEMPTED…………………… 4

   1.  Defendant Cannot Overcome the Strong Presumption
     Against Preemption…………………………………………… 4

     a.  Plaintiff's Claims Are Not Expressly Preempted…………… 5
       i.  Plaintiff's Claims Does Not Seek to
         Impose "Requirements" Within The Meaning
         Of Section 379r………………………………………… 6

       ii.  To The Extent That Plaintiff's Claims Can
         Be Read As Seeking To Impose Requirements
         Within The Meaning Of Section 379r,
         They Are Identical To Federal Food Labeling
         Requirements………………………………………… 7

     b.  Plaintiff's Claims Are Not Impliedly Preempted…………… 9

   B.  THE PRIMARY JURISDICTION DOCTRINE IS INAPPLICABLE……10

   C.  THERE IS NO SAFE HARBOR UNDER THE FDCA………………..11

   D.  PLAINTIFF'S CONSUMER PROTECTION CLAIMS
     ARE MORE THAN ADEQUATELY PLED………………………...12

   1.  Standard on a Motion To Dismiss Consumer Protection Claims…………12

   2.  Plaintiff Sufficiently Pleads Claims under the Consumer
     Protection Statutes…………………………………………………....13

   3.  Plaintiff's Complaint Adequately Pleads Fraud…………………………14

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

E.    PLAINTIFF COMPLIED WITH CLRA'S NOTICE
        REQUIREMENTS……………………………………………………..15

IV.  CONCLUSION……………………………………………………………16

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Altria Group, Inc. v. Good*
    129 S. Ct. 538 (2008) ...............................................................3, 5, 6

*Ashcroft v. Iqbal*
    129 S.Ct. 1937 (2009) ....................................................................12

*Bates v. Dow Agrosciences LLC*
    544 U.S. 431 (2005) ......................................................................4, 9

*Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*
    290 F.3d 476 (2d Cir. 2002) .............................................................12

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ........................................................................12

*Geier v. Am. Honda Motor. Corp.*
    529 U.S. 861 (2000) ........................................................................10

*Holk v. Snapple Beverage Corp.*
    575 F.3d 329 (3rd Cir. 2009) ("*Snapple*") ........................................3, 5

*Miss Am. Org. v. Mattel, Inc.*
    945 F.2d 536 (2d Cir. 1991) .............................................................11

*Odom v. Microsoft Corp.*
    486 F.3d 541 (9th Cir. 2007) ...........................................................14

*United States v. Western Pac. R.R. Co.*
    352 U.S. 59 (1956) ......................................................................10, 11

*Vermont Pure Holdings, LTD v. Nestle Waters North America, Inc.*
    No. Civ.A. 03-11465 DPW, 2006 U.S. Dist. Lexis 13683 .....................7, 8, 9

*Vess v. Ciba-GEigy Corp. USA*
    317 F.3d 1097 (9th Cir. 2003) ..........................................................14

*Williams v. Gerber Prods., Co.*
    552, F.3D 934 (9th Cir. 2008) .....................................................13, 14

*Williams v. Gerber Products, Co.*
    552 F.3d 934 (9th Cir. 2008) ............................................................13

*Wyeth v. Levine*
    129 S. Ct 1187 (2009) ........................................................... *passim*

**CALIFORNIA CASES**

*In re Tobacco II Cases*
    46 Cal. 4th 298 (2009) ..................................................................12

*National Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*
    107 Cal.App.4th 1336 (2003) ...........................................................8

**OTHER CASES**

*Kwikset Corp. v. Superior Court*
    2011 WL 240278 ...........................................................................12

**FEDERAL STATUTES**

21 U.S.C. § 343- 1(a)(1) ........................................................................8

21 U.S.C. § 343- 1(a)(5) ........................................................................8

21 U.S.C. § 343(a) ..................................................................................8

Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 201, *et seq.* .................. *passim*

Food and Drug Administration Modernization
    Act of 1997 (21 U.S.C. § 379r) .......................................... *passim*

**CALIFORNIA STATUTES**

Cal. Health & Saf.Code, § 110100, subd. (a) ..............................................8

*Homeopathic Pharmacopeia of the United States* ("HPUS") ...................................1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiff Gina DeLaRosa ("Plaintiff") respectfully submits the following opposition to the motion to dismiss ("Motion" or "Def. Mem.") filed by Defendant Boiron, Inc. ("Defendant"):

## I.   INTRODUCTION

Defendant's Motion boils down to a basic argument: that Defendant is obligated by federal law to make statements about the "indication for use" of ColdCalm and since federal law requires Defendant to make such statements, Defendant has "safe harbor" from California consumer protection laws.   (Def. Mem. 1:18-1:22; 14:8-15:10). Defendant fails to recognize an important distinction and the crux of Plaintiff's instant Opposition - that federal law requires Defendant to include statements about Children's ColdCalm's ("ColdCalm") indications for use, not ***false*** statements about ColdCalm's indications for use.  Nowhere does federal or state law give Defendant carte blanche to make false statements, as Defendant would have the Court believe.

Defendant further attempts to shield itself by citing the *Homeopathic Pharmacopeia of the United States* ("HPUS"), arguing that because the ingredients in Children's ColdCalm are in the HPUS, the United States Congress has deemed the ingredients effective in relieving symptoms of the common cold.  ("Def. Mem. 6:5-18; 11:26-12:11).  Such a premise could not be further from the truth.  Defendant admits that the HPUS only lists: (1) standards of source; (2) composition; and (3) preparation of homeopathic drugs.   (Def. Mem. 6:10-18).   The HPUS lists: where to get homeopathic drugs; what they are made up of; and how to prepare them.   *Id.* Conspicuously absent from this list is "indication for use."  The HPUS does not take a position on indication for use ("Multi-Symptom Cold Relief") – that is left up to the homeopathic drug preparer (Defendant in this case) to decide.  Nowhere in the HPUS is there any claim that the ingredients chosen by Defendant are effective to treat the

symptoms of the common cold.  "A product's compliance with requirements of the HPUS, USP, or NF does not establish that it has been shown by appropriate means to be safe, *effective*, and not misbranded for its intended use."  (FDA Compliance Policy Guide (CPG7132.15) "Conditions Under Which Homeopathic Drugs May be Marketed").  Defendant, and Defendant alone chose the indications for use and as such Defendant cannot look to place blame elsewhere – the decision lies with Defendant, as does the resulting liability.  Defendant attempts to transform Plaintiff's Complaint to an attack on homeopathy and federal regulations.  (Def. Mem. 1:7-9).  In reality, Plaintiff's Complaint attacks the truthfulness of ColdCalm's efficacy claims.   (Plaintiff's Complaint ("Complaint") ¶ 7).

Defendant markets a sugar pellet called "Children's ColdCalm" ("ColdCalm") that Defendant claims will relieve sneezing, runny nose, nasal congestion, sinus pain, headaches, and sore throats. (Complaint ¶ 7).  The Complaint's allegations, taken as true for purposes of this motion, allege that Defendant's marketing claims are false and that the sugar pellets have no medicinal value.

In its Motion to Dismiss, Defendant does not deny that its marketing claims are false; instead Defendant argues that because ColdCalm is not "mislabeled" under federal labeling requirements, Plaintiff's Complaint consists of an "impermissible collateral attack" on federal law.  (Def. Mem. 4:16-18).  Thus, Defendant reasons that Plaintiff's claims are expressly or impliedly pre-empted by federal law. (Def. Mem. 5:20-13:13).  For good measure, Defendant also argues that Plaintiff's Complaint fails to plead fraud with particularity and presents an evidentiary argument regarding sufficiency of Plaintiff's notice under the California Consumer Legal Remedies Act ("CLRA"). (Def. Mem. 15:11-16:28).

As set forth in more detail below, Defendant's Motion misinterprets applicable federal and state law, misunderstands or mischaracterizes Plaintiff's allegations, and improperly asks the Court to make evidentiary determinations that are inappropriate in

a Motion for Judgment on the Pleadings.

First, Defendant's pre-emption arguments are sorely misplaced.  Not only has the United States Supreme Court recently reiterated that the presumption against preemption is strong (especially in areas such as over the counter supplements that are traditionally regulated by the states), case law squarely rejects the notion that false product "efficacy" claims are preempted. *See e.g. Altria Group, Inc. v. Good*, 129 S. Ct. 538 (2008) (affirming lower court decision and holding claims based upon deceptive labeling of cigarettes are not preempted); *Holk v. Snapple Beverage Corp.*, 575 F.3d 329 (3rd Cir. 2009) ("*Snapple*") (holding that claims alleging that labeling of beverage was deceptive due to presence of sweetener in product were not preempted).  These cases make clear that the claims here are not preempted – indeed, Defendant has not and will not point to a single case in which a federal court has held that false efficacy claims about a homeopathic product have been held to be protected under federal law

Second, Defendant either misunderstands or mischaracterizes plaintiff's complaint.  This lawsuit would hardly disturb "the decisions of the expert federal agency charged expressly by Congress with regulating the marketing and sale of homeopathic drugs." (Def. Mem. 4:16-18).  Instead, as in *Altria*, this lawsuit is aimed at stopping false advertising – many of which are made in off-label marketing materials – that are neither permitted by nor regulated pursuant to federal law.

Third, Defendant's arguments attacking the sufficiency of the pleadings are also simply wrong.  The Complaint contains great detail as to the specific false claims at issue here, listing the affirmative, deceptive misrepresentations and providing detailed information regarding the specific purchase made by the Plaintiff.  Indeed, as seen by the spirited (but erroneous) arguments put forth by Defendant, the Complaint contains more than enough information for Defendant to understand the allegations.

Fourth and finally, Defendant's argument regarding the notice it received pursuant to the California Consumer Legal Remedies Act is premised upon a (false) factual

argument that requires an evidentiary finding inappropriate for a Motion for Judgment on the Pleadings.

Defendant's Motion should be denied in its entirety.

## II.   STATEMENT OF FACTS

This lawsuit seeks redress for Defendant's false advertising of a sugar pellet called Coldcalm.  Specifically, Defendant falsely claims that Coldcalm will relieve symptoms associated with the common cold, such as sneezing, runny nose, nasal congestion, sinus pain, headaches, and sore throats. (Complaint ¶ 7).

The Complaint details how and why each of the challenged marketing claims are false and misleading and asserts claims for violation of the California consumer protection statutes and the common law. (Complaint ¶¶ 7, 8, 17-19, 20, 30-31, 34, 38, 45).

## III.  ARGUMENT

## A.   PLAINTIFF'S CLAIMS ARE NOT PREEMPTED

Defendant begins by arguing that Plaintiff's claims are expressly preempted by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 201, *et seq.* (the "FDCA"). Defendant is wrong.

## 1.   Defendant Cannot Overcome the Strong Presumption Against Preemption.

The United States Supreme Court repeatedly has instructed that there is a strong presumption against preemption of state claims. *See*, *e.g.*, *Wyeth v. Levine*, 129 S. Ct 1187, 1195 (2009). "In areas of traditional state regulation, [a court must] assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005). Health and Safety issues have traditionally fallen within the province of state

regulation. *See Snapple*, 575 F.3d at 334; *Altria,* 129 S. Ct. at 543. ("[w]hen addressing questions of express or implied pre-emption, we begin our analysis with the assumption that the historic police powers of the States are not to be superseded by the Federal Act").

Accordingly, the Court's analysis begins with a very strong presumption that federal law does not preempt the consumer protection laws of California. As demonstrated below, Defendant cannot come close to overcoming this heavy burden of presumption against preemption.

### a.   Plaintiff's Claims Are Not Expressly Preempted.

Defendant argues that Plaintiff's claims are expressly preempted by the Food and Drug Administration Modernization Act of 1997 (21 U.S.C. § 379r), which expressly preempts food-labeling requirements that conflict with federal requirements. (Def. Mem. at 5:20-10:15). A review of the statute, however, reveals that this is not the case here – not by a long shot. Indeed, Defendant has not – and cannot – point to a single case where state law claims regarding false representations about homeopathic product efficacy have been pre-empted by federal law.

Section 379r reads as follows:

> (a) In general Except as provided in subsection (b), (c)(1), (d), (e), or (f) of this section, no State or political subdivision of a State may establish or continue in effect any requirement - (1) that relates to the regulation of a drug that is not subject to the requirements of section 353(b)(1) or 353(f)(1)(A) of this title; and (2) that is different from or in addition to, or that is otherwise not identical with, a requirement under this chapter, the Poison Prevention Packaging Act of 1970 (15 U.S.C. 1471 et seq.), or the Fair Packaging and Labeling Act (15 U.S.C. 1451 et seq.).

21 U.S.C. § 379r.

Thus, to be preempted by this provision a state law must create a requirement that

(1) relates to the regulation of an OTC drug; and (2) that is different from or in addition to, or that is otherwise not identical with, a requirement under the FDCA.  As set forth below, Defendant has not and cannot show that either prerequisite is present in this case.

### i.   Plaintiff's Claims Does Not Seek to Impose "Requirements" Within The Meaning Of Section 379r.

Defendant has not, and cannot, demonstrate that Plaintiff's demand that Defendant stop making false claims about the efficacy of Coldcalm are the type of claims described in section 21 U.S.C. § 379r.  Instead, an analysis of Plaintiff's claims shows that Plaintiff simply seeks to enforce Defendant's obligations under California law to refrain from making deceptive and misleading representations to consumers, which have nothing to do with labeling requirements regulated by the FDCA. *See Altria,* 129 S. Ct.at 538 (holding that state consumer protection claim was not preempted because claim was based on a duty not to deceive and not a duty to warn as misstated by the defendants).

In other words, Defendant is not obligated by Federal law to make false efficacy claims about Coldcalm – which is what Defendant would have to show in order to invoke the provisions of Section 379r.  Instead, Defendant argues that because the homeopathic remedies purportedly contained in ColdCalm are listed in the HPUS, the ColdCalm advertisements should be considered "indications for use" pursuant to  21 C.F.R. § 201.61(b).  (Def. Mem.at 4:14-20).[1]

---

[1]    Curiously, Defendants' website presents an entirely different story to consumers, specifically noting that its products are ***not*** regulated as either a food or dietary supplement.  See   http://www.boironusa.com/homeopathy/what-is-homeopathy.php (last accessed on February 3rd, 2011) ("Homeopathic medicines are therapeutically active micro-doses of mineral, botanical and biological substances. They are reliable and safe drugs, therefore considered by many as an excellent first choice when self-medicating. . .Being regulated as a drug, as opposed to a food or dietary supplement, ensures that homeopathic medicines adhere to drug labeling specifications. . . These
Continued on the next page

Defendant misunderstands both the governing law as well as Plaintiff's claims. First, Plaintiff's claims include non-label marketing claims that cannot be pre-empted by Section 379r.  (Complaint ¶ 7;Exhibit 1 to Complaint).  Second, the unexceptional fact that federal law requires marketers of homeopathic products to accurately state their intended use does not, and cannot, allow a manufacturer to falsely market its products as curing ailments that they do not.  The Supreme Court, in *Wyeth v. Levine*, 129 S.Ct. 1187, 1197-98 (2009) specifically found to the contrary, noting that "through many amendments to the FDCA and to FDA regulations, it has remained a central premise of federal drug regulation that the manufacturer bears responsibility for the content of its label at all times."

### ii.    To The Extent That Plaintiff's Claims Can Be Read As Seeking To Impose Requirements Within The Meaning Of Section 379r, They Are Identical To Federal Food Labeling Requirements.

Even assuming that Plaintiff's state law claims could be interpreted as seeking to impose "requirements" within the meaning of Section 379r, they are "identical" to the corresponding federal  requirements and therefore not preempted.

It is undisputed the FDCA clearly contemplates that states may enforce requirements that are identical to FDA standards. *Vermont Pure Holdings, LTD v. Nestle Waters North America, Inc.*, No. Civ.A. 03-11465 DPW, 2006 U.S. Dist. Lexis 13683, **7-22 (D. Mass. 2006) (finding no federal preemption of state consumer protection claims).  Moreover, "[t]he term 'identical,' does not refer to the specific words used in the state requirement but to the direct and indirect effects of the requirement." *Id.*  Thus, word-for-word statutory comparisons are not necessary; rather, the court should attempt to discern whether the claims at issue impose the same

---

Continued from the previous page

clear specifications make choices easier for consumers and guidance easier for retailers.").

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

effective requirement for labeling. *Id.*  Indeed, in *Vermont Pure*, the court found that 21 U.S.C. § 343- 1(a)(1), an express preemption provision of the FDCA almost identical to 21 U.S.C. § 343- 1(a)(5), did not preempt the plaintiff's state law claims for unfair competition because those claims sought to impose state law requirements identical to the federal requirements. *Id.*[2]  Accordingly, even if Plaintiff's claims can be interpreted as "requirements" within the specter of § 379r, to the extent such requirements are identical to the federal requirements they are not subject to preemption.

Defendant fails to explain how the effect of Plaintiff's claims – i.e., that Defendant not make false claims about the efficacy of its sugar pellets – would be anything but identical to the federal requirements for food labeling.  Nor can they.  For example, Plaintiff is challenging statements such as "Multi-Symptom Cold Relief" which represent that ColdCalm is effective in the treatment of the common cold.  To the extent these misrepresentation claims could be construed to be addressed by the FDCA, they are substantively identical to the general misbranding requirements of 21 U.S.C. § 343(a) which deems food as to be "misbranded -- if its labeling is false or misleading in any particular." 21 U.S.C. §343(a).  Significantly, there is no provision in §343-1 which expressly preempts state law claims that might impose requirements of the type described in §343(a).[3]

Therefore, as seen above, to the extent that Plaintiff's claims challenging Defendant's misleading statements such as "Multi-Symptom Cold Relief" could be

---

[2]   California has adopted the Sherman Law as its version of the Food, Drug, and Cosmetic Act. This law incorporates "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the [Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* (the "FDCA")]" as "the food labeling regulations of this state." Cal. Health &Saf.Code, § 110100, subd. (a). The identical language and purpose of these statutes underscores the fact that Plaintiffs' claims are not preempted.

[3]   Defendant's reliance on *National Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal.App.4th 1336 (2003), is misplaced. The court clearly indicated that the claims were subject to state regulation.  ("In sum, both private persons and prosecuting authorities may sue to unjoin false advertising and obtain restitution.") The court went on to hold that the burden of proof in establishing violations for false advertising lies with the plaintiff and in that case the plaintiff had not produced any evidence to satisfy its burden.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1  construed to impose food-labeling requirements, such requirements would be identical

2  to the federal requirements and in furtherance of federal law.[4]   Accordingly,   federal

3  law expressly preempts none of Plaintiff's claims.[5]

4

5  **b.   Plaintiff's Claims Are Not Impliedly Preempted.**

6      The implied preemption principles recently set forth by United States Supreme

7  Court in *Wyeth v. Levine*, 129 S. Ct. 1187 (2009), are on point.  In *Wyeth,* an action

8  brought under state law against a drug manufacturer for allegedly insufficient product

9  labeling, the Supreme Court considered whether the FDA's approvals of exact label

10  warnings provided a defendant manufacturer "with a complete defense" to the

11  plaintiff's state-law claims. *Id*. at 1190.  Concluding that they do not, the Supreme

12  Court rejected the drug manufacturer's claim that the state law claims were impliedly

13  preempted by the FDCA and related FDA regulations. *Id*. at 1190, 1194.[6]

14      As in *Wyeth*, Defendant's arguments here for implied preemption in this case fail.

15

16  [4]   Significantly, express preemption analysis "turns not on whether a claim requires
direct interpretation and application of FDA regulations... but on the identity of the state
17  and federal regulations." *Vermont Pure,* 2006 U.S. Dist. Lexis 13683 at *16. Thus,
although Plaintiff does not need to prove that Defendant did not meet the federal food
18  labeling requirements in order to prove the state law claims alleged, even if that were
so, Plaintiff's claims still would not be preempted.
19  [5]   The fact that Plaintiff's claims allow for damage remedies and federal food labeling
requirements do not allow for such remedies does not mean that Plaintiff's claims seek
20  to impose food labeling requirements that differ from federal food labeling
requirements sufficient to justify preemption. *See Bates*, 544 U.S. at 447-48
21  (preemption does not "preclude States from imposing different or additional remedies,
but only different or additional requirements").
22  [6]   In arguing before the Court, Wyeth made "two separate preemption arguments: first,
that it would have been impossible for it to comply with the state-law duty to modify
23  Phenergan's labeling without violating federal law, and   second,   that   recognition
of Levine's state   tort   action would create an unacceptable obstacle to   the
24  accomplishment and execution of the full purposes and objectives of Congress ...
because it substitutes a lay jury's decision about drug labeling for the expert judgment
25  of the FDA." *Id*. at 1193-94. Neither argument carried the day as defendant could
nevertheless have strengthened its disclosures without violating federal law, and where
26  Congress' silence as to whether "state-law suits posed an obstacle to its
objectives...coupled with its certain awareness of the prevalence of state tort litigation,"
27  served as "powerful evidence that Congress did not intend FDA oversight to be the
exclusive means of ensuring drug safety and effectiveness." *Id*. at 1196-1200.

28

- 9 -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

First, Defendant has not and cannot overcome the presumption against preemption in a case involving a traditional area of state. *Id.* at 1194-95. This conclusion is appropriate given the absence of congressional intent to preempt such claims. Finally, because the state law claims presently before the Court do not serve to impede congressional objectives, they cannot stand as an "obstacle" to such objectives. Just as the FDA is not the final authority for "ensuring drug safety and effectiveness," the FDA does not displace complimentary forms of regulation by the states regarding deceptive marketing. *Id.* at 1200, 1202. Accordingly, this Court should deny Defendant's Motion based on federal preemption in its entirety.[7]

## B.   THE PRIMARY JURISDICTION DOCTRINE IS INAPPLICABLE

Defendant argues that the FDA has primary jurisdiction over the subject matter of this case and, therefore, that Plaintiff's claims should be dismissed in deference to potential regulatory action by the FDA. (Def. Mem. 12). Defendant is wrong.

"Primary jurisdiction ... applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body[.]" *United States v. Western Pac. R.R. Co.*, 352

---

[7]   Defendant's reliance on *Geier v. Am. Honda Motor. Corp.*, 529 U.S. 861 (2000), is misplaced. In *Geier*, the Supreme Court considered the preemptive effect of a federal regulation that addressed in detail the types of passive restraints required and permitted in automobiles. *Id.* at 875. The Supreme Court found that the federal regulation "deliberately provided the manufacturer with a range of choices among different passive restraint devices" to "bring about a mix of different devices introduced gradually over time," in an attempt to "lower costs, overcome technical safety problems, encourage technological development, and win widespread consumer acceptance—all of which would promote [the regulation's] safety objectives." *Id.* The Supreme Court then held that the plaintiff's claim seeking to hold Honda liable for failing to install one particular passive restraint would frustrate the federal purpose. Here, by contrast, plaintiff does not seek to hold Defendant liable for conduct that the FDA has previously considered and deliberately decided to allow, or that it has required Defendant to take. Rather, this case involves statements that are either outside the scope of the FDCA or are impermissible under the Act. For this reason as well, Plaintiff's claims are not impliedly preempted.

U.S. 59, 63-64 (1956).  The doctrine only has effect "when Congress has delegated initial or exclusive responsibilities to an administrative agency to resolve certain issues in complex matters in which the agency has special competence." *Miss Am. Org. v. Mattel, Inc.*, 945 F.2d 536, 544 (2d Cir. 1991).  Here, section 379r shows that Congress did not intend FDA to have exclusive authority over food labeling.  The primary jurisdiction doctrine should not be used to override Congress' intent that state authority would coexist with FDA authority in areas not covered by section 379r.

Nonetheless, in order to argue for dismissal based upon primary jurisdiction, Defendant insists that this case is about the general principal of whether any "homeopathic drugs lack therapeutic benefits." (Def. Mem. at 12:22-24).

In reality, however, a reading of Plaintiff's Complaint shows that this case is about specific misleading representations made about ColdCalm.  Determining whether label statements are misleading or deceptive under consumer protection laws is not an issue outside "the conventional experience of judges." *Western Pac. R.R. Co.*, 352 U.S. at 64; *see Lockwood*, 597 F. Supp. 2d at 1035 ("[T]his is not a technical area in which the FDA has greater technical expertise than the courts—every day courts decide whether conduct is misleading.").  Because the issue here is not one that requires a federal agency's "special competence," the primary jurisdiction doctrine is inapplicable.

## C.   THERE IS NO SAFE HARBOR UNDER THE FDCA

Distilled to its essence, Defendant's "safe harbor" argument consists of an assertion that  federal truth-in-labeling requirements create a ceiling for state regulation of false and misleading efficacy claims involving consumer products.  Defendant is wrong: "[F]ederal labeling requirements create a floor, not a ceiling for state regulation." *Wyeth v. Levine,* 129 S.Ct. 1187, 1193 (2009).

///

///

## D.   PLAINTIFF'S CONSUMER PROTECTION CLAIMS ARE MORE THAN ADEQUATELY PLED

Courts have repeatedly recognized the importance of the consumer protection statutes at issues here: indeed, just a few days ago the California Supreme Court issued a landmark opinion forcefully stating that "labels matter." *Kwikset Corp. v. Superior Court*, 2011 WL 240278 *9.  These laws are particularly important in lawsuits, such as this, brought to "protect the general public against unscrupulous business practices" involving deceptive and misleading corporate conduct. *In re Tobacco II Cases,* 46 Cal. 4th 298, 312-13 (2009) (holding California "consumer class actions and representative UCL actions serve important roles in the enforcement of consumers' rights...These actions supplement the efforts of law enforcement and regulatory agencies. This court has repeatedly recognized the importance of these private enforcement efforts").

### 1.   Standard on a Motion To Dismiss Consumer Protection Claims

In considering a Rule 12 motion to dismiss for failure to state a claim upon which relief can be granted, a court "must accept as true the [factual] allegations contained in the complaint, and all reasonable inferences must be drawn in favor of the non-movant." *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 479 (2d Cir. 2002).  To survive the motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement . . .'" *Iqbal*, 129 S. Ct. at 1946.  Indeed, the Supreme Court recently cautioned that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Additionally, because of the important societal goals forwarded by consumer protection statutes, motions to dismiss on consumer protection cases are highly

disfavored. *See e.g. Williams v. Gerber Products, Co.*, 552 F.3d 934, 938 (9th Cir. 2008)(reversing dismissal by lower court and holding that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on a [motion to dismiss]"); *see also Goshen*, 98 N.Y.2d at 324 (applying New York law); *Bosland*, 297 N.J. at 562 (applying New Jersey law).

Accordingly, Defendant's motion to dismiss on ground of insufficiency must be denied.

**2.    Plaintiff Sufficiently Pleads Claims under the Consumer Protection Statutes**

As stated above and in detail in the Complaint, Defendant made false representations that its product would provide common cold symptom relief for "sneezing", "runny nose", "nasal congestion", "sinus pain", "headaches", and "sore throat." (Complaint ¶ 7).  As alleged in the Complaint, these affirmative statements by Defendant were deceptive and misleading because ColdCalm has no impact on the common cold. (Complaint ¶ 7).    As stated in the Complaint, Plaintiff relied upon the misrepresentations. (Complaint ¶8). Furthermore, Plaintiff made the decision to purchase ColdCalm based upon these representations when she was in the retail store in which she purchased ColdCalm as detailed in the Complaint. (Complaint ¶ 9).

These detailed allegations are more than sufficient to plead a claim for violation of the consumer protection statutes at issue here under either Rule 8(a) or 9(b). *See e.g. Williams*, 552 F.3d at 938 (reversing lower court dismissal of California consumer protection claim).  *Williams v. Gerber Prods., Co.* 552, F.3D 934 (9th Cir. 2008) is on point. In *Gerber*, defendant made representations on the front of its baby-food packaging that suggested the baby food contained fruit and was nutritious, only to disclaim these representations in small print on the back on the packaging. The Gerber defendant argued that the disclosures on the back of the packaging nevertheless adequately informed the plaintiff as to the true quality of the product. The Ninth Circuit

rejected this argument and reversed the district court's dismissal of the consumer protection claim, holding that "[w]e disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.* at 939- 40.

### 3.    Plaintiff's Complaint Adequately Pleads Fraud

Plaintiff's Complaint alleges that Defendant manufactures, advertises, distributes and sells ColdCalm.  (Complaint ¶¶ 2, 7, 9).  The Complaint alleges that Defendant claims that ColdCalm provides relief from the common cold.  (Complaint ¶ 7).  The Complaint alleges that Plaintiff purchased ColdCalm in 2010.   (Complaint ¶ 8). Attached to the Complaint are copies of ColdCalm advertising and labels identifying the false claims. (Exhibits 1, 2 to Complaint).  These allegations fully demonstrate "the who, what, when, where, and how" of Defendant's scheme.  *Vess v. Ciba-GEigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Rule 9(b) "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  *Odom v. Microsoft Corp.,* 486 F.3d 541 (9th Cir. 2007).  The Complaint contains factual allegations sufficient for this purpose.

Finally, Defendant asserts Plaintiff does not adequately allege intent, reliance, and injury. (Def. Mem. 16:5-6).   Defendant ignores many of Plaintiff's allegations. Plaintiff alleges she relied on Defendant's false, misleading, and deceptive written misrepresentations about ColdCalm. (Complaint ¶¶ 7, 8).  Defendant promoted and marketed ColdCalm as something it was not.  (Complaint ¶¶ 7, 8, 21).  Plaintiff purchased ColdCalm, used ColdCalm personally and for her family, and found ColdCalm to be worthless.  (Complaint ¶ 8).  These allegations suffice to plead intent, reliance, and injury. *See, e.g., Isip*, 155 Cal. App. 4th at 27.

### E.   PLAINTIFF COMPLIED WITH CLRA'S NOTICE REQUIREMENTS

Defendant asserts that Plaintiff's complaint is deficient because Defendant was not given notice of the California Legal Remedies Act claim prior to the filing of Plaintiff's Complaint.   (Def. Mem. 16:12-28).   This is the second attempt at this argument by Defendant.   Defendant made the same argument in its Ex Parte Motion (Defendant's Ex Parte Application 7:14-20).   Now that Plaintiff has responded to Defendant's argument, Defendant seeks to bolster its argument and argue that it has now given Plaintiff leave to amend.   That claim is not only false, (Declaration of Ryan M. Ferrell, Ferrell decl. ¶ 3, 5), but irrelevant for purposes of Defendant's current motion.

The Complaint alleges, accurately, that Plaintiff sent notice pursuant to CLRA 1782. (Complaint ¶ 32).   That is all that is required to withstand defendant's misguided attack.   However, as has been set forth in other motions, Defendant apparently refused to accept the letter and returned it to plaintiff.   (Plaintiff's Opposition to Defendant's Ex Parte Application at 5:5-18).   Even though service of the CLRA letter was proper, out of an abundance of caution Plaintiff has repeatedly offered to re-send the letter and stipulate to an amended complaint. *Id.* Defendant steadfastly refused, resting on an argument that they admit is a "technicality." (Ferrell decl., ¶ 3).   Now, Defendant would like to appear before the Court and state that it has granted leave to amend; however, Defendant has not granted leave to amend and instead has granted leave to dismiss. (Ferrell decl., ¶ 5).

///

///

///

///

///

///

## IV.  CONCLUSION

For the reasons stated above, Plaintiff respectfully request that Defendant's motion to dismiss be denied in its entirety.[8]

Dated:  February 4, 2011                NEWPORT TRIAL GROUP
                                        A Professional Corporation
                                        Scott J. Ferrell
                                        Ryan M. Ferrell


                                        By:  _/s/  Ryan M. Ferrell_____
                                              Ryan M. Ferrell

                                        Attorneys for Plaintiff and the Class

---

[8]   If the Court does not deny Defendants' motion to dismiss in its entirety, Plaintiff respectfully requests leave to amend the complaint. *See e.g. Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1995) ("leave to amend should be freely  granted").

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS