O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| GINA DELAROSA, | CASE NO. SACV 10-1569-JST (CWx) |
|---|---|
| Plaintiff, | |
| vs. | **ORDER DENYING DEFENDANT'S MOTION FOR CERTIFICATION TO APPEAL THE JULY 25, 2011 ORDER DENYING ITS MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO 28 U.S.C. § 1292(b)** |
| BOIRON, INC., et al. | |
| Defendants. | |

Before the Court is Defendant Boiron, Inc's ("Defendant's") Motion for Certification to Appeal the July 25, 2011 Order Denying its Motion for Judgment on the Pleadings Pursuant to 28 U.S.C. § 1292(b) ("Motion"). (Mot., Doc. 78.) Plaintiff Gina Delarosa ("Plaintiff") opposed Defendant's Motion on September 26, 2011. (Opp'n, Doc. 84.) Defendant replied on October 3, 2011. (Reply, Doc. 85.) Having considered the parties' briefing and supporting documentation, and having taken this matter under submission, the Court DENIES Defendant's Motion.

## I. BACKGROUND

Defendant is the manufacturer and distributor of the over-the-counter ("OTC") medication, Children's Coldcalm ("Coldcalm"). (Compl. ¶ 2, Doc. 1, Ex. 2.) Coldcalm belongs to a class of medicine known as "natural" or "homeopathic," and is described as such on its packaging. (*Id*. ¶ 11.) Defendant advertises on the outside of the package that Coldcalm relieves symptoms of the common cold, including: sneezing, runny nose, nasal congestion, sinus pain, headaches, and sore throat. (*Id*. ¶ 7.)

Plaintiff read Defendant's advertisements on the outside of the Coldcalm package and read about Coldcalm on a website. (*Id*. ¶ 8.) After reading that Coldcalm relieved cold symptoms, Plaintiff purchased Coldcalm, and her family used the drug as directed. (*Id*.) Plaintiff's family neither obtained the advertised relief from the common cold, nor received any other benefit from using Coldcalm. (*Id*.)

On August 31, 2010, Plaintiff, individually and on behalf of all others similarly situated, filed a Complaint in California state court alleging three claims: (1) violation of the California Legal Remedies Act ("CLRA"); (2) common-law fraud; and (3) violation of the California Unfair Competition Law ("UCL"). (*Id*. ¶¶ 29-46.) In sum, each of Plaintiff's claims alleges that Coldcalm's marketing, advertising, and/or labeling was false and misleading, because Coldcalm "did not work as advertised, nor did Plaintiff experience any of the promised benefits." (*Id*. ¶ 31.) On October 14, 2010, Defendant removed this action to federal court on the basis of diversity jurisdiction and the Class

2

1  Action Fairness Act.  (Notice of Removal at 3-4, Doc. 1.)  The Court subsequently
2  certified a class under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) as to each
3  claim set forth in the Complaint of "[a]ll persons who are domiciled or reside in California,
4  who purchased Children's Coldcalm for personal use at any time during the four years
5  preceding the filing of [Plaintiff's] Complaint."  (Order Granting Mot. for Class
6  Certification at 23, Doc. 76.)

   On January 21, 2011, Defendant filed a Motion for Judgment on the Pleadings,
arguing, among other things, that each of Plaintiff's claims are expressly or impliedly
preempted by the federal Food Drug and Cosmetic Act, 21 U.S.C. §§ 301 (2006) *et seq.*
(the "FDCA").  (Mot. for J. on the Pleadings ("JOP Motion"), Doc. 27-1.)  The Court
denied Defendant's JOP Motion on July 25, 2011, holding that Plaintiff's claims based on
alleged misrepresentations regarding the efficacy of Coldcalm were neither expressly
preempted by § 379r of the FDCA, nor impliedly preempted under the doctrines of field
preemption or conflict preemption.  (Order Denying Def.'s Mot. for J. on the Pleadings
("JOP Order"), Doc. 75.)  Thereafter, Defendant moved to certify the JOP Order for
interlocutory appeal under 28 U.S.C. § 1292(b).

## II.   LEGAL STANDARD

   28 U.S.C. § 1292(b) "provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals."  *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1025-26 (9th Cir. 1982).  A district court may certify such an interlocutory appeal where the order (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ."  28 U.S.C. § 1292(b) (2006).  Each of the three certification requirements must be met for an order to be appropriate for interlocutory review.  *See Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (denying

certification under § 1292(b) where defendant failed to establish substantial ground for difference of opinion); *In re Cement Antitrust Litig.*, 673 F.2d at 1026.

"The party seeking review bears the burden of showing that 'exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1087 (E.D. Cal. 2008) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).

### III. DISCUSSION

Defendant requests that the Court certify its JOP Order for interlocutory appeal. (Mot. at 1.) Specifically, Defendant requests that the Court certify the questions (1) whether the express preemption clause set forth in § 379r of the FDCA preempts Plaintiff's state law claims alleging that Defendant misrepresented the efficacy of Coldcalm in its marketing, advertising, and/or labeling, and (2) whether Plaintiff's claims were impliedly preempted by the FDCA because they conflict with the overall federal regulatory scheme for homeopathic drugs. (*See id.* at 6.) The Court will first summarize the preemption holdings set forth in its JOP Order, and then consider in turn whether Defendant has established each of the § 1292(b) criteria for interlocutory review.

#### A. *The JOP Order*

The Court ruled in its JOP Order that Plaintiff's state law claims based upon Defendant's alleged misrepresentations regarding the effectiveness of Coldcalm were neither expressly nor impliedly preempted by the FDCA. In so doing, the Court first reviewed the regulatory framework for homeopathic OTC drugs, such as Coldcalm, under the FDCA. It explained that the FDCA's definition of a "drug" includes homeopathic OTC medications that are recognized in the Homeopathic Pharmacopoeia of the United States ("the HPUS"), and that such medications are, therefore, subject to certain regulations under the FDCA regarding adulteration, misbranding, and labeling. (JOP Order at 3-4, 16.)

The Court then compared the manner in which the FDCA regulates non-homeopathic OTC drugs and homeopathic OTC drugs. (*Id*. at 3-7.) It concluded that, while both non-homeopathic and homeopathic OTC drugs are subject to the general adulteration and misbranding provisions of the FDCA, 21 U.S.C. §§ 351, 352, and the general labeling regulations promulgated by the FDA, 21 C.F.R. §§ 201 (2011) *et seq*., the regulation of non-homeopathic and homeopathic OTC drugs diverges in the area of efficacy. Specifically, the FDA evaluates whether non-homeopathic OTC drugs are "safe, effective and not misbranded" under a comprehensive drug monograph system created by the FDA, 21 C.F.R. §§ 330.1 (2011) *et seq.*[1] (JOP Order at 4-5.) To draft the monographs, the FDA divided non-homeopathic OTC drugs into categories, each of which was assigned to an expert review panel to evaluate safety, efficacy, and labeling, and to advise the Commissioner regarding the promulgation of monographs establishing conditions under which non-homeopathic OTC drugs listed in each monograph are generally recognized as safe, effective and not misbranded. (*Id*. at 4.) After a review and comment period, the Commissioner ultimately published a final monograph. A non-homeopathic OTC drug that fails to conform to its applicable monograph after the date the final monograph becomes effective is subject to regulatory action. (*Id*. at 4-5.)

The FDA does not, however, evaluate whether homeopathic OTC drugs are safe, effective and not misbranded. (*Id*. at 5-7.) While the FDCA requires homeopathic drugs to conform to the standards for strength, quality, and purity set forth in the HPUS, it contains no provision establishing when a homeopathic drug is safe, effective and not misbranded. And the FDA has promulgated no such regulations. To the contrary, the

---

[1] Regulations regarding when a drug is "safe, effective, and not misbranded," are distinct from the general misbranding provisions of the FDCA. The former refer to the subset of regulations pertaining to the FDA's comprehensive monograph system for non-homeopathic OTC drugs that, pursuant to its own terms establishes "[g]eneral conditions for general recognition [of non-homeopathic OTC drugs] as safe, effective, and not misbranded." 21 C.F.R. § 330.1. The latter refers to general provisions regarding misbranding contained in the FDCA, none of which establish conditions for safety or efficacy. *See* 21 U.S.C. § 352.

FDA has made clear that "[a] product's compliance with requirements of the HPUS . . . does not establish that it has been shown by appropriate means to be safe, effective, and not misbranded for its intended use." (*Id*. at 7, quoting FDA Compliance Policy Guide ("CPG") § 400.400.)

With the above-regulatory framework established, the Court turned to the question of whether Plaintiff's state law claims regarding the alleged misrepresentation of Coldcalm's efficacy are preempted by the FDCA. First, the Court considered whether Plaintiff's claims are expressly preempted under 21 U.S.C. § 379r(a), which provides that the FDCA preempts any state requirement governing OTC medications that: (1) "relates to the regulation of a drug [that is not subject to the requirements of section 353(b)(1) or 353(f)(1)(A) of this title]," and (2) "is different from or in addition to, or that is otherwise not identical with a requirement under this chapter . . . ." (*Id*. at 8, quoting 21 U.S.C. § 379r(a).)

The Court concluded that Plaintiff's claims are not expressly preempted under § 379r because they fall within an exemption to preemption set forth in § 379r(d)(1). Under that section, where, as here, a drug is "not the subject of an application approved under section 355 . . . or section 357 of [the FDCA] . . . or a final regulation promulgated by the Secretary establishing conditions under which the drug is generally recognized as safe and effective and not misbranded," § 379r(a) applies only to a state requirement that:

> [R]elates to the same subject as, but is different from or in addition to, or that is otherwise not identical with—(A) a regulation in effect with respect to the drug pursuant to a statute described in subsection (a)(2) of this section; or (B) any other requirement in effect with respect to the drug pursuant to an amendment to such a statute . . . .

(*Id*. at 9-10, quoting 21 U.S.C. § 379r(d)(1).) The Court interpreted the limiting language "same subject as" to refer to the general subject of homeopathic drugs, and concluded that, because the FDA has promulgated no regulations or requirements regarding when a

6

homeopathic drug is safe, effective and not misbranded, state law requirements regarding the same are exempted from express preemption under § 379r(a). (*Id*. at 11-14.)

The Court further concluded that, even if state requirements regarding representations pertaining to the efficacy of Coldcalm were not exempted under § 379r(d)(1), they would not be preempted under § 379r(a) because they do not constitute state-imposed requirements that are "different from or in addition to" federal requirements. (*Id*. at 14, quoting 21 U.S.C. § 379r(a).) In so ruling, the Court found persuasive the discussion of the scope of § 379r(a) preemption set forth in *Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271 (C.D. Cal. 2008), (JOP Order at 15), which made clear that "the analysis under § 379r depends not on the theory upon which the claim is brought, but its ultimate outcome: would a finding of liability impose requirements that are different from or in addition to FDA requirements," *Carter*, 582 F. Supp. 2d at 1284. As to the applicable FDA requirements, the Court recognized the general FDCA misbranding provisions deeming a drug misbranded if its label is false or misleading, and the general FDA labeling requirements—none of which evaluates or approves requirements for the safety or efficacy of homeopathic OTC drugs. (JOP Order at 16-17.) As to the state law requirements, the Court recognized that Plaintiff's claims relate only to whether Coldcalm's marketing, advertising and/or labeling was false and misleading as to efficacy, and, therefore, "if proven to be true, would simply require Defendant to truthfully state its efficacy or not sell its products . . . ." (*Id*. at 18.) Because liability under Plaintiff's state law claims would impose upon Defendant an obligation identical to that required under the FDCA, and not in conflict with any FDA regulation establishing when Coldcalm is safe, effective and not misbranded, the Court concluded that "such relief would not impose a state requirement that is 'different from or in addition to, or that is otherwise not identical with' that of the FDCA." (*Id*., quoting § 379r(a)(2).) Therefore, it held that Plaintiff's claims are not preempted under § 379r(a).

Second, the Court considered whether Plaintiff's claims are impliedly preempted by the FDCA under either field preemption or conflict preemption. (*Id*. at 18-19.) The Court

7

concluded that the express exemption set forth in § 379r(d) and the savings clause contained in § 379r(f) preclude a finding of field preemption. (*Id.* at 19.) It also concluded that conflict preemption did not apply because the state requirements encompassed in Plaintiff's claims are identical to those imposed by the FDCA. (*Id.*)

### B. *§ 1292(b) Criteria*

Defendant seeks to certify each of the above-enumerated preemption holdings for interlocutory appellate review. While Defendant has established that the JOP Order involves controlling questions of law and that appellate review may materially advance the ultimate termination of the litigation, it has failed to establish a substantial ground for difference of opinion regarding the Court's preemption holdings. Accordingly, Defendant has not met its burden under § 1292(b), and the Court DENIES Defendant's Motion.

#### i. **Controlling Question of Law & Materially Advance the Litigation**

Both the first and third prong of the § 1292(b) analysis consider the extent to which immediate appellate review of a non-appealable district court order will advance the entirety of the litigation.

A question of law is "controlling" within the meaning of the first prong of § 1292(b) where the matter at issue is not "collateral to the basic issues of [the] case," and the "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026, 1027 (citation omitted). Issues such as "the determination of who are necessary and proper parties, whether a court to which a cause has been transferred has jurisdiction, or whether state or federal law shall be applied" may be controlling questions of law. *Id.* at 1026-27 (quoting *United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959)); *see also Harris v. Ford Motor Co.*, 110 F.3d 1410, 1411-12 (9th Cir. 1997) (hearing interlocutory appeal under § 1292(b) regarding whether National Traffic and Motor Vehicle Safety Act of 1966 preempted state tort law). Similarly, the third prong of § 1292(b) requires the party seeking review to establish that "an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ." 28 U.S.C. § 1292(b).

Defendant seeks to certify the question of whether the FDCA expressly or impliedly preempts each of Plaintiff's state law claims. Defendant correctly identifies that the issue of preemption "is purely legal and resolution of this question will determine whether a case dispositive defense is available . . . ." (Mot. at 1.) Accordingly, Defendant has shown that an appellate decision regarding the preemption holdings in the JOP Order would "materially affect the eventual outcome of [this] litigation," *In re Cement Antitrust Litig.*, 673 F.2d at 1027, and could "materially advance the termination" of this case to the extent the appellate court found Plaintiff's claims preempted. Accordingly, Defendant has satisfied the first and third prongs of § 1292(b).

## ii. **Substantial Ground for Difference of Opinion**

"A substantial ground for difference of opinion exists . . . when novel legal issues are presented, on which fair-minded jurists might reach contrary conclusions . . . ." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). Therefore:

> To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear. Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.

*Couch*, 611 F.3d at 633. However, a substantial ground for difference of opinion that will support interlocutory review does not exist "just because a court is the first to rule on a particular question," "a party[] strong[ly] disagree[s] with the Court's ruling," or "settled law might be applied differently." *Id.* "It is well settled that the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Id.* at 634.

Here, Defendant could satisfy the second prong of § 1292(b) by establishing a "substantial ground for difference of opinion" as to either the JOP Order's express or

9

1  implied preemption holdings, as either ground would independently establish a case
2  dispositive defense to Plaintiff's claims.  Because Defendant has not established a
3  "substantial ground for difference opinion" as to either express or implied preemption, it
4  has not carried its burden under § 1292(b).

5  As to express preemption, Defendant argues that a "substantial ground for
6  difference of opinion" exists regarding the Court's holding under § 379r(d)(1) because the
7  Court ignored federal regulations that apply to the manufacture, marketing, and sale of
8  homeopathic OTC drugs.  (Mot. at 8-12.)  This argument misconstrues the Court's JOP
9  Order.  Contrary to Defendant's assertion, the Court examined both the general provisions
10 of the FDCA regarding adulteration and misbranding, and the general FDA regulations
11 regarding labeling that apply to homeopathic OTC drugs, and concluded that none of those
12 provisions evaluate or approve conditions under which homeopathic OTC medications are
13 safe and effective.  Accordingly, the Court determined that the plain language of
14 § 379r(d)(1) excluded state requirements regarding the efficacy of homeopathic OTC
15 drugs from preemption under § 379r(a).  Defendant does not proffer an alternative
16 construction of § 379r(d)(1) or direct the Court to any provision of the FDCA, or FDA
17 regulation thereunder, establishing conditions under which homeopathic OTC medications
18 are safe and effective.  Nor could it, as the FDA acknowledges that none exist.  CPG
19 § 400.400.  In the absence of any plausible contrary construction of the plain language of
20 § 379r(d)(1) or specific evidence of a controlling regulation, Defendant's objection to the
21 Court's § 379r(d)(1) preemption holding amounts to no more than "strong disagreement
22 with the Court's ruling," which is insufficient to warrant interlocutory review.  *Couch*, 611
23 F.3d at 633.

24 Defendant's fall-back position—that an interlocutory appeal is appropriate because
25 the Court's § 379r(d)(1) holding is a matter of first impression—fares no better.  (Opp'n at
26 3.)  The Ninth Circuit has expressly rejected the notion that "the mere presence of a
27 disputed issue that is a question of first impression" supports certification under § 1292(b).
28 *Couch*, 611 F.3d at 634.  Because Defendant has failed to offer a plausible competing

construction of § 379r(d)(1), the Court is not persuaded that the dearth of legal authority interpreting that provision gives rise to a substantial ground for disagreement as to the Court's holding in the JOP Order.

Moreover, even if Defendant had established a "substantial ground for difference of opinion" as to the Court's express preemption holdings under § 379r(d)(1), it would not satisfy the second prong of § 1292(b) because it did not show a substantial ground for difference of opinion as to the Court's holding under § 379r(a). Despite its assertions to the contrary, Defendant has not identified any conflicting case law or other authority interpreting or applying § 379r(a) in a manner inconsistent with the Court's conclusion that Plaintiff's state law claims do not seek to impose any requirement on Defendant that is "different from or in addition to, or that is otherwise not identical with" that of the FDCA.

To the contrary, the Court's holding regarding preemption under § 379r(a) is consistent with Supreme Court and Ninth Circuit precedent interpreting analogous preemption language in the Medical Device Amendments to the FDCA, 21 U.S.C. § 360(a). *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 321-25 (2008) (holding that § 360(a) preempted state tort law claims regarding the safety and efficacy of Defendant's catheter device because the applicable FDA review process resulted in a determination by the FDA that the device offered a reasonable assurance of safety and effectiveness"); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484-94 (1996) (holding that § 360(a) did not preempt state common-law negligent design claims because the FDA did not evaluate or approve the safety and efficacy of Defendant's pacemaker); *Degelmann v. Advanced Med. Optics*, ---F.3d----, 2011 WL 4470641, at *4-5 (9th Cir. 2011) (holding federal requirements preempted state law where contact lens solution complied with the FDA's "prescribed level of efficacy"). The Court's holding is also consistent with other district courts that have interpreted § 379r(a). *See Carter*, 582 F. Supp. 2d at 1284-85 (holding § 379r(a) preempted state law claims as to the safety and efficacy of non-homeopathic OTC cough syrup because Defendant's statements regarding its products "[were] based entirely upon FDA-approved labeling and advertising, and explain[ed] the conditions

*under which the FDA has determined* that OTC cough and cold medicine will be safe and effective) (emphasis added); *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 790 (E.D. Tex. 2008) (holding § 379r(a) preempted state law claims regarding efficacy of lice treatment because "during [the] monograph process, the FDA tested the active ingredients in [the product] and determined that they were 'safe and effective' for the 'treatment of head lice'").

The FDA warning letters Defendant uses to bolster its contention that the FDA regulates the efficacy of homeopathic OTC drugs also support, rather than undermine, the Court's conclusion. Specifically, Defendant points to a warning letter in which the FDA found a homeopathic OTC drug label "false and misleading" under the FDCA's general misbranding provision, 21 U.S.C. § 352(a), because the label displayed inactive ingredients in a manner that "create[d] an impression of value greater than their true functional role in the formulation"—i.e., the label was misleading as to the efficacy of the homeopathic ingredients. (Def.'s Req. for Judicial Notice ("RJN"), Ex. C at 3, Doc. 86.) Defendant argues that such FDA enforcement activity supports the conclusion that Plaintiff's state claims regarding Defendant's misrepresentation of Coldcalm's efficacy are preempted by the FDCA. To the contrary, such enforcement activity merely confirms the Court's holding under § 379r(a)—to the extent that the FDCA and FDA regulate the misbranding of homeopathic OTC drugs, federal requirements impose liability that is coextensive with Plaintiff's claims. Defendant is liable under both the "federal requirement" and "state requirement" if its label is false and misleading as to the efficacy of Coldcalm.

As to implied preemption, Defendant has similarly failed to demonstrate a "substantial ground for difference of opinion" regarding whether the FDCA's requirements regarding homeopathic OTC drugs conflict with any state requirement that would be imposed if Defendant is found liable under Plaintiff's claims. Federal and state law conflict for the purposes of implied preemption when "it is impossible for a private party to comply with both state and federal law." *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567, 2587

(2011) (citation and internal quotation marks omitted). "The question for impossibility is whether the private party could independently do under federal law what state law requires of it." *Id*. at 2579 (internal quotation marks omitted). As set forth above, Defendant has not directed the Court's attention to any specific federal requirement regarding when homeopathic OTC drugs are safe and effective for their stated use aside from the general prohibition against "false or misleading" labeling. The Court finds no conflict between the general federal requirement and state requirement regarding misrepresentations in labeling, advertising, and/or marketing.

In sum, Defendant has established only that this Court is the first to rule on the preemptive effect of the FDCA as it pertains to state law claims regarding the efficacy of homeopathic OTC drugs, and that Defendant strongly disagrees with the Court's JOP Order. Neither demonstration is sufficient to permit interlocutory review under § 1292(b).

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion.

DATED: December 29, 2011  _____

JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE