UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA DELAROSA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BOIRON, INC., et al.,<br><br>Defendants. | CASE NO. SACV 10-1569-JST (CWx)<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 135)** |

On August 31, 2010, Plaintiff Gina Delarosa filed the instant lawsuit in state court, alleging that labeling and advertising of the homeopathic, over-the-counter drug Children's Coldcalm, manufactured and distributed by Defendant Boiron, Inc. ("Boiron" or "Defendant") violated various consumer protection statutes and constituted common-law fraud. (*See* Notice of Removal, Ex. 2 (Compl.), Doc. 1.)

Currently before the Court is Boiron's Motion for Summary Judgment ("Motion"). (Mot., Doc. 135.) Plaintiff opposed, and Defendant replied. (Opp'n, Doc. 152; Reply, Doc. 168.) Pursuant to the joint request of the parties, and this Court's Order on that request, in this Order the Court rules on Boiron's "pending motion for summary judgment *relating only to plaintiff's claim for injunctive relief*." (Doc. 295 (emphasis added).) For the reasons set forth below, the Court GRANTS IN PART the Motion.

## I. BACKGROUND

### A. History of the Litigation

By way of background of this litigation, and not for purpose of ruling on the instant Motion, the Court sets forth the following allegations from the Complaint. Defendant Boiron is the manufacturer and distributor of Children's Coldcalm ("Coldcalm"). (Compl. ¶ 2.) Coldcalm belongs to a class of medicine known as "natural" or "homeopathic," and is described as such on its packaging. (*Id.* ¶ 11; *see id.* Ex. 2.) The homeopathic ingredients in Coldcalm include various flowers, vegetables, insects, metals, and poison, which are diluted up to a magnitude of one part ingredient to 1 trillion parts of the solution. (*Id.* ¶ 17-18.) Defendant advertises on the outside of the package that Coldcalm will relieve symptoms of the common cold, including sneezing, runny nose, nasal congestion, sinus pain, headaches, and sore throat. (*Id.* ¶ 7.)

Plaintiff alleges she read Defendant's advertisements on the outside of the Coldcalm package and read about Coldcalm on a website. (*Id.* ¶ 8; *id.* Exs. 1, 2.) After reading that Coldcalm relieved cold symptoms, Plaintiff alleges she purchased Coldcalm,

and her family used the drug as directed. (*Id.* ¶ 8.) She further alleges that her family did not obtain the advertised relief from the common cold, nor did they receive any benefits from using Coldcalm. (*Id.*) On the basis of these allegations, Plaintiff filed a Complaint alleging three claims: (1) violation of the California Legal Remedies Act ("CLRA"); (2) common-law fraud; and (3) violation of the California Unfair Competition Law ("UCL"). (*Id.* ¶¶ 29-46.) Plaintiff requests all available legal and equitable remedies. (*Id.* at 11.)

### B. Undisputed Facts

For the purpose of ruling on the instant Motion, the following are undisputed facts upon which this Court relies. Plaintiff testified that she purchased Coldcalm at a CVS in Highland, California in April or May 2010. (Def.'s Separate Statement of Undisputed Facts ("SUF") at 6, #1, Doc. 135-2; Scott J. Ferrell Decl. ("SJF Decl.") Ex. J (Delarosa Dep.) at 36:20-37:2, Doc. 152-36.) She further testified that she purchased it for the whole family and for the treatment of "the sniffles, sneezing, runny nose." (SJF Decl. Ex. J at 37:3-6, 42:8-22.) Plaintiff also testified at deposition that when she purchased the Coldcalm she saw that the product said it was a homeopathic product. (SJF Decl. Ex. J at 45:4-7.) Plaintiff testified that "everybody" in her family for whom she purchased it took the Coldcalm for about 24 hours. (*Id.* at 49:11-50:3.) Plaintiff testified that after she and her children took it, they continued to have their symptoms. (*Id.* at 50:18-51:10.) Finally, Plaintiff testified at her deposition as follows:

> Q    Do you understand, Ms. DeLaRosa, that what you're asking the Court to do is take Children's ColdCalm from off the shelves as currently packaged, from all the stores in California?
>
> A    Yes
>
> MR. FERRELL:  Objection
>
> THE WITNESS:  Well –
>
> MR. FERRELL: Calls for a legal conclusion.
>      But you can answer what your understanding is.

3

> THE WITNES: For my understanding, yes, that's what I'm asking.
>
> BY MS. SARCHIO:
>
> Q   And why are you asking that?
>
> A   Because it's false advertisement. I don't think that people should buy a product – shouldn't be tricked into buying a product that doesn't work.

(Sarchio Decl. Ex. C (Delarosa Dep.) at 64:4-20, Doc. 135-3.)

On the basis of this deposition testimony, Defendant argues that Plaintiff has no intention to purchase Coldcalm in the future and therefore lacks standing to seek injunctive relief.

## II.   LEGAL STANDARD

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2).

Furthermore, "Rule 56[(a)]¹ mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Therefore, if the nonmovant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion. *See In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ("non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor").

## III. DISCUSSION

Defendant argues that because Plaintiff has no intention to purchase Children's Coldcalm in the future, she therefore lacks standing to seek injunctive relief. (*See* Mot. at 17-19.)

Defendant does *not* argue that under California law, Plaintiff would not have standing to seek injunctive relief on behalf of a class, and indeed it appears that she would. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 319 (2009) ("Proposition 64 did not amend the remedies provision of section 17203. This is significant because under section 17203, the primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction . . . ."); *see also Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320 (2011) (the purpose of the UCL "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services"). However, because Defendant removed this case to federal court, the issue before this Court is whether Plaintiff may pursue such relief in federal court. "Under the *Erie* doctrine, federal

---

¹ Rule 56 was amended in 2010. Subdivision (a), as amended, "carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'" Fed. R. Civ. P. 56, Notes of Advisory Committee on 2010 amendments.

1  courts sitting in diversity apply state substantive law and federal procedural law."
2  *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  To assist in
3  determining whether a law was substantive or procedural, the Supreme Court promulgated
4  the "outcome-determination test": "[D]oes it significantly affect the result of a litigation
5  for a federal court to disregard a law of a State that would be controlling in an action upon
6  the same claim by the same parties in a State court?"  *Id.*  Unquestionably, under that test,
7  California law—*i.e.*, that Plaintiff has standing to seek injunctive relief on behalf of the
8  class—would be deemed substantive and therefore applicable in this Court.

9  However, Article III trumps both California law and the *Erie* doctrine.  *See* U.S.
10 Const. art. vi, cl. 2 ("This Constitution . . . shall be the supreme law of the land . . . .").
11 Indeed, the *Erie* Court's construction of the Rule of Decision Act recognized that state law
12 may have to give way to the Constitution's dictates.[2]  *See Erie R.R. Co. v. Tompkins*, 304
13 U.S. 64, 78 (1938) ("*Except in matters governed by the Federal Constitution* or by Acts of
14 Congress, the law to be applied in any case is the law of the State.") (emphasis added).
15 Standing in federal court is "governed by the Federal Constitution."

16 "In order to satisfy the *Lujan* [*v. Defenders of Wildlife*, 504 U.S. 555 (1992)]
17 requirements, '[t]he plaintiff must demonstrate that he has suffered or is threatened with a
18 concrete and particularized legal harm, *coupled with a sufficient likelihood that he will*
19 *again be wronged in a similar way.*'"  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979
20 (9th Cir. 2011) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir.
21 2007) (en banc)) (emphasis added).  A plaintiff "must establish a real and immediate threat
22 of repeated injury."  *Bates*, 511 F.3d at 985 (internal quotation marks omitted).  "[P]ast
23 wrongs do not in themselves amount to [a] real and immediate threat of injury necessary to

---

[2] The Rule of Decision Act, as now codified, provides: "The laws of the several states, except where the *Constitution or treaties of the United States or Acts of Congress otherwise require* or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."  28 U.S.C. § 1652 (emphasis added).

make out a case or controversy." *Id.* "However, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *Id.* Moreover, "the claimed threat of injury must be likely to be redressed by the prospective injunctive relief." *Id.* Finally, class certification "is the snapshot in time for determining initial standing." *Id.* at 987.

"In a class action, the plaintiff class bears the burden of showing that Article III standing exists." *Ellis*, 657 F.3d at 978. "[S]tanding requires that (1) the plaintiff suffered an injury in fact, *i.e.*, one that is sufficiently concrete and particularized and actual or imminent, not conjectural or hypothetical, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision." *Id.* (quoting *Bates*, 511 F.3d at 985). "Plaintiffs must show standing *with respect to each form of relief sought*." *Id.* (emphasis added). This is true "whether it be injunctive relief, damages or civil penalties." *Bates*, 511 F.3d at 985. "Standing exists if at least one named plaintiff meets the requirements." *Ellis*, 657 F.3d at 978 (emphasis added). Here, the last element of the standing test is at issue with regard to injunctive relief.

The *Ellis* decision is instructive. The named plaintiffs in *Ellis* were current and former employees of Costco who alleged gender-discrimination in the company's promotion practices. *Ellis*, 657 F.3d at 974. The district court had certified a class under Rule 23(b)(2) and (b)(3). Costco sought interlocutory review of the certification decision, arguing, *inter alia*, that the district court erred in certifying the class because the named plaintiffs lacked standing to seek injunctive relief. *Id.* at 978. The Ninth Circuit concluded that the named representative who was a current employee of Costco "satisfie[d] all aspects of the standing requirements." *Id.* at 979. As a current employee who still desired promotion, she was able to "show that there is a significant likelihood that she will be wronged again in a similar way" because "Costco's challenged promotion practices . . . have not changed." *Id.*

The decision in *Wang v. OCZ Technology Group, Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011), is analogous. The plaintiff in *Wang* alleged that OCZ, a manufacturer of solid state drives (SSDs), misrepresented the performance (including storage capacity) of certain models of its SSDs in promotional advertising. *Id.* at 622. On the bases of those allegations, the plaintiff asserted, *inter alia*, claims under the UCL and False Advertising Law. *Id.* at 623. The court concluded that the plaintiff lacked standing to seek injunctive relief because he could not demonstrate the requisite likelihood of future injury, notwithstanding the fact that "OCZ maintains the same marketing materials and website pages and thereby continues to violate the false advertising laws." *Id.* at 626. This was so because "any loss of value to Wang's [] SSD has already occurred. If Wang paid an inflated price for the product based on OCZ's alleged misrepresentations, he is in no danger of doing so again." *Id*.

In the deposition excerpt of Plaintiff quoted above, she testifies that Coldcalm "doesn't work" and that the product (or its packaging or the advertisement of the product) is a "false advertisement." (Sarchio Decl. Ex. C at 64:4-20.) Indeed, Plaintiff does not dispute the fact that she does not intend to purchase Coldcalm in the future. (*See* Opp'n at 24-25; Pl.'s Statement of Genuine Issues ("SGI") at 48, # 19; Doc. 152-1.) Because Plaintiff does not believe the product works and does not intend to purchase it again, there is not a "sufficient likelihood that [she] will again be wronged in a similar way." *Ellis*, 657 F.3d at 979 (internal quotation marks omitted). Thus, she does not have Article III standing to seek injunctive relief because there is no "threat of future injury" that could be redressed by injunctive relief. *See Bates*, 511 F.3d at 985. Because there is no named plaintiff who has standing to pursue injunctive relief (Delarosa is the only named plaintiff), that remedy is unavailable to the class. *See Bates*, 511 F.3d at 985. Although this result is contrary to the principle aim of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), the Ninth Circuit's and Supreme Court's precedents construing Article III mandate this outcome. As in *Wang*, Plaintiff cannot seek injunctive relief, even if Boiron is still using

the same packaging and advertising, because any loss to her "has already occurred" and there is no likelihood of future harm to her.

Plaintiff relies on *Henderson v. Gruma Corp.*, No. CV 10-04173 AHM (AJWx), 2011 WL 1362188 (C.D. Cal. April 11, 2011), for the proposition that this result must be avoided because it would thwart or undermine California's consumer protection laws. (*See* Opp'n at 24.) The Court recognizes that the *Henderson* court rejected the same argument Defendant makes here—namely, that the plaintiff in that case did not have standing under the UCL or FAL to seek injunctive relief because they would "not purchase the products at issue in the future." *Id.* at *7 (internal quotation marks omitted). However, that case concerned the manufacturer's advertisements that, *inter alia*, the products at issue contained zero grams of cholesterol and trans fat. *Id.* *1. Plaintiff, here, will not buy the homeopathic product again because she believes it does not work. That is a different situation than one involving a food product containing allegedly false advertising; in that circumstance, a plaintiff may indeed purchase the food in the future, once it is no longer falsely advertised.

*Ries v. Arizona Beverages USA LLC*, --- F.R.D. ---, No. 10-01139 RS, 2012 WL 5975247, at *1 (N.D. Cal. Nov. 27, 2012), is similarly distinguishable. The plaintiffs in *Ries* "accuse[d] defendants of advertising, marketing, selling, and distributing AriZona Iced Tea beverages as 'All Natural,' '100% Natural,' and 'Natural' . . . despite the presence of [high fructose corn syrup] and citric acid." *Id.* at *1 (footnote omitted). On the basis of those allegations, the *Ries* plaintiffs brought UCL and FAL claims against the manufacturer of the beverages, and sought injunctive relief. Significantly, the *Ries* court rejected defendants' argument that plaintiffs would not purchase in the future any of the beverages at issue in that case: "Accordingly, the record is devoid of any grounds to discount *plaintiffs' stated intent to purchase in the future*, thereby satisfying the requisites for standing." *Id.* at *8 (emphasis added). As explained above, no such equivocation is present in this case.

1	*Ries* also cites *Henderson* for the proposition that "were the Court to accept the
2	suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat
3	standing for an injunction, then injunctive relief would never be available in false
4	advertising cases, a wholly unrealistic result." *Ries*, 2012 WL 5975247, at *9. However,
5	in *Ries*, the product, properly labeled, might still be purchased by the plaintiff. Here,
6	Plaintiff has unequivocally stated that her assertion of product mislabeling is based on her
7	position that the product simply does not work, and that she will not purchase the product
8	again. Based on this undisputed fact, the Court must conclude that she will not be
9	wronged again in a similar way, and injunctive relief would, therefore, be ineffective as to
10	her.

11	To the extent that *Henderson* and other cases purport to create a public-policy
12	exception to the standing requirement, that exception does not square with Article III's
13	mandate. *See Henderson*, 2011 WL 1362188, at *8 ("While Plaintiffs may not purchase
14	the same Gruma products as they purchased during the class period, because they are now
15	aware of the true content of the products, to prevent them from bringing suit on behalf of a
16	class in federal court would surely thwart the objective of California's consumer protection
17	laws."). The Court further notes *Henderson*, and other cases reaching the same conclusion
18	as *Henderson*, did so in part based on reliance on cases where potential future injury to the
19	plaintiff was apparent. Both *Henderson* and *Larson v. Trader Joe's Co.*, No. C 11-05188
20	SI, 2012 WL 5458396, *1,*4 (N.D. Cal. June 14, 2012), cite broad language in *Fortyune v.*
21	*American Multi-Cinema, Inc.*, No. CV0105551NMJWJX, 2002 WL 32985838, *7 (C.D.
22	Cal. Oct. 22, 2002): "If this Court rules otherwise [and does not find standing], like
23	defendants would always be able to avoid enforcement of the ADA." Yet the *Fortyune*
24	court—which recognized that courts deny constitutional standing for injunctive relief when
25	a plaintiff alleges only past injury that is unlikely to be repeated—expressly found that
26	plaintiff Fortyune "ha[d] established a likelihood of future injury." *Id.*

27
28

1       The Court recognizes that Defendant's decision to remove this case deprives Plaintiff of one remedy.  This is a result Article III requires, notwithstanding the general rule embodied in the *Erie* doctrine.  In another context, the Ninth Circuit acknowledged the unfortunate anomaly that "a plaintiff whose cause of action is perfectly viable in state court under state law many nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury."  *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001).  In this case, because there is no likelihood of future injury to Plaintiff that is redressable by injunctive relief, Plaintiff does not have standing to pursue that remedy and that remedy is therefore unavailable to the class.  *See Ellis*, 657 F.3d at 979.

## IV.   CONCLUSION

      For the foregoing reasons, the Court GRANTS IN PART Defendant's Motion for Summary Judgment.

DATED: December 28, 2012          _____

                                       UNITED STATES DISTRICT JUDGE