1  CLIFFORD H. PEARSON (Bar No. 108523)
     cpearson@pswlaw.com
2  DANIEL L. WARSHAW (Bar No. 185365)
     dwarshaw@pswlaw.com
3  BOBBY POUYA (Bar No. 245527)
     bpouya@pswlaw.com
4  **PEARSON, SIMON & WARSHAW, LLP**
   15165 Ventura Boulevard, Suite 400
5  Sherman Oaks, California 91403
   Telephone: (818) 788-8300
6  Facsimile:  (818) 788-8104

7  SCOTT J. FERRELL (Bar No. 202091)
     sferrell@trialnewport.com
8  JAMES B. HARDIN (Bar No. 205071)
     jhardin@trialnewport.com
9  STEVEN R. TELLES (Bar No. 246514)
     stelles@trialnewport.com
10 RYAN M. FERRELL (Bar No. 258037)
     rferrell@trialnewport.com
11 **NEWPORT TRIAL GROUP**
   895 Dove Street, Suite 425
12 Newport Beach, California 92660
   Telephone: (949) 706-6464
13 Facsimile:  (949) 706-6469

14 Attorneys for Plaintiff and the Class

15

16                **UNITED STATES DISTRICT COURT**

17               **CENTRAL DISTRICT OF CALIFORNIA**

18

| | |
|---|---|
| 19 GINA DELAROSA, individually, and on behalf of all others similarly situated, | CASE NO. SACV 10-1569-BRO (CWx) |
| 20 | |
| 21 Plaintiff, | **CLASS ACTION** |
| 22 vs. | **NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD** |
| 23 BOIRON, INC., et al., | |
| 24 Defendants. | Date:   November 4, 2013<br>Time:   1:30 p.m.<br>Crtrm.: 14 |

25

26

27

28

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  TO THE COURT AND TO ALL PARTIES AND THEIR RESPECTIVE

2  ATTORNEYS OF RECORD:

3  PLEASE TAKE NOTICE that on November 4, 2013, at 1:30 p.m. or as soon

4  thereafter as the matter may be heard in the Courtroom of the Honorable Beverly

5  Reid O'Connell, United States District Court, Central District of California, Plaintiff

6  Gina Delarosa ("Plaintiff") will and hereby does move the Court, pursuant to

7  Federal Rules of Civil Procedure 23(h) and 54(d)(2), for an Order approving and

8  awarding attorneys' fees, costs, and an incentive award.  By this motion, Plaintiff

9  seeks:

10  • $670,790.59 in attorneys' fees;

11  • $79,209.41 in litigation costs; and

12  • A $5,000 incentive award for Plaintiff, Gina Delarosa.

13  This motion is made on the grounds that: (1) the attorneys' fees sought are

14  fair and reasonable in light of the efforts of Class Counsel in obtaining the

15  settlement herein; (2) the requested attorneys' fees comport with the applicable law;

16  (3) the expenses for which reimbursement is sought were reasonably and necessarily

17  incurred in connection with the prosecution of this action; and (4) a reasonable

18  payment to Plaintiff for her efforts on behalf of the class members is warranted and

19  appropriate.  This motion is based upon this Notice of Motion, the accompanying

20  Memorandum of Points and Authorities, the accompanying Declarations of Class

21  Counsel, the pleadings and records on file herein, and upon such additional evidence

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD

1   or argument as may be accepted by the Court at or prior to the hearing.

2

3   DATED: August 19, 2013          **PEARSON, SIMON & WARSHAW, LLP**

4                                  CLIFFORD H. PEARSON
                                   DANIEL L. WARSHAW
5                                  BOBBY POUYA

6                                  **NEWPORT TRIAL GROUP**

7                                  SCOTT J. FERRELL
                                   JAMES B. HARDIN
8                                  STEVEN R. TELLES
9                                  RYAN M. FERRELL

10

11                                 By:   _____*/s/ Daniel L. Warshaw*_____
12                                          DANIEL L. WARSHAW
                                   Attorneys for Plaintiff and the Class
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................... 1

II. FACTUAL AND PROCEDURAL HISTORY .................................................. 2

III. CLASS COUNSEL'S LODESTAR IS REASONABLE AND
    JUSTIFIED AND SHOULD BE APPROVED BY THE COURT .................. 4

    A.  California Law Controls Plaintiff's Fee Request ........................ 4

    B.  California Law Requires the Court to Apply the Lodestar
        Method to Calculate Plaintiff's Reasonable Attorneys' Fees ......... 5

    C.  Class Counsel Incurred a Reasonable Lodestar in Order to
        Successfully Prosecute This Case on Behalf of the Class
        Members ......................................................................... 6

        1.  Class Counsel's Lodestar Is Reasonable and Compensable ........ 7

        2.  Class Counsel's Hourly Rates Are Reasonable ....................... 11

IV. THE REDUCED ATTORNEYS' FEES REQUESTED ARE
    REASONABLE ................................................................................ 12

    A.  The Fee Requested Is Supported by the Complexity of This Case ...... 12

    B.  Class Counsel Handled the Difficult Issues Presented in This
        Litigation with Tremendous Skill and Expertise ......................... 13

    C.  The Attorneys' Fee Award Is Reasonable in Light of the
        Contingent Risks in This Case ............................................. 14

    D.  The Fee Requested Is Justified by the Results Obtained by Class
        Counsel ........................................................................... 15

V.  CLASS COUNSEL SHOULD BE REIMBURSED THEIR COSTS ............ 16

VI. THE COURT SHOULD AWARD AN INCENTIVE AWARD TO
    THE CLASS REPRESENTATIVE .......................................................... 17

VII. CONCLUSION ................................................................................ 18

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

# TABLE OF AUTHORITIES

**CASES**

*Alberto v. GMRI, Inc.*,
  No. 07-CV-1895, 2008 WL 2561106 (E.D. Cal. June 24, 2008)......................18

*Bank of America v. Micheletti Family Partnership*,
  No. C 08–2902 JSW, 2009 WL 1110830 (N.D. Cal. Feb. 26, 2009) .................4

*Chalmers v. City of Los Angeles*,
  796 F.2d 1205 (9th Cir. 1986) ...........................................................................11

*Chavez v. Nestle USA, Inc.*,
  No. CV 09-9192, 2011 WL 2150128 (C.D. Cal. May 19, 2011)......................13

*Children's Hosp. & Med. Ctr. v. Bunt*,
  97 Cal.App.4th 740 (2002) ................................................................................11

*City of Oakland v. Oakland Raiders*,
  203 Cal.App.3d 78 (1988) ........................................................................5, 11, 12

*Delarosa v. Boiron, Inc.*,
  275 F.R.D. 582 (C.D. Cal. 2011)...............................................................1, 9, 14

*Delarosa v. Boiron, Inc.*,
  818 F.Supp.2d 1177 (C.D. Cal. 2011) .......................................................1, 8, 13

*Dunk v. Ford Motor Co.*,
  48 Cal.App.4th 1794 (1996) ................................................................................5

*Fraker v. Bayer Corp.*,
  No. CV F 08-1564, 2009 WL 5865678 (E.D. Cal. Oct. 6, 2009) .....................13

*Hopson v. Hanesbrands, Inc.*,
  No. 08–CV–0844–EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ..............17

*In re Bluetooth Headset Prods. Liability Litig.*,
  654 F.3d 935 (9th Cir. 2011) ..................................................................5, 12, 15

*In re Businessland Sec. Litig.*,
  No. 09-CV-20476, 1991 WL 427887 (N.D. Cal. June 14, 1991) .....................17

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

*In re SmithKline Beckman Corp.*,
   751 F.Supp. 525 (E.D. Pa. 1990) ........................................................................ 17

*In re Sutter Health Uninsured Pricing Cases*,
   171 Cal.App.4th 495 (2009) ........................................................................ 7

*In re Warner Comm's Sec. Litig.*,
   618 F.Supp. 735 (S.D.N.Y. 1985) ........................................................................ 14

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ........................................................................ 6

*Ketchum v. Moses*,
   24 Cal.4th 1122 (2001) ........................................................... 5, 7, 12, 14

*Kona Enter., Inc. v. Estate of Bernice Pauahi Bishop*,
   229 F.3d 877 (9th Cir. 2000) ........................................................................ 5

*Krumme v. Mercury Ins. Co.*,
   123 Cal.App.4th 924 (2004) ........................................................... 15, 16

*Lealao v. Beneficial California, Inc.*
   82 Cal.App.4th 19 (2000) ........................................................................ 15

*Mills v. Electric Auto-Lite Co.*,
   396 U.S. 375 (1970) ........................................................................ 17

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................ 17

*Serrano v. Priest*,
   20 Cal.3d 25 (1977) ........................................................................ 5, 12

*Stokus v. Marsh*,
   217 Cal.App.3d 647 (1990) ........................................................................ 7

*The People ex rel. Dep't. of Transp. v. Yuki*,
   31 Cal.App.4th 1754 (1995) ........................................................................ 12

*Vizcaino v. Microsoft*,
   290 F.3d 1043 (9th Cir. 2002) ........................................................................ 5

*Vo v. Las Virgines Mun. Water Dist.*,
   79 Cal.App.4th 440 (2000) ........................................................... 5, 6, 7

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

*Webb v. Board of Edu.*,
    471 U.S. 234 (1985) .......................................................................... 7

*Weeks v. Baker & McKenzie*,
    63 Cal.App.4th 1128 (1998) ............................................................. 7

*Wershba v. Apple Computer, Inc.*,
    91 Cal.App.4th 224 (2001) ............................................................... 7

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) .......................................................... 13

*X-Ray Film Antitrust Litig.*,
    No. 960886, 1998 WL 1031494 (Cal. Super. Ct. Oct. 22, 1998)...................... 16

STATUTES

21 U.S.C. § 379r ................................................................... 2, 8, 13

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

# I.     **INTRODUCTION**

Plaintiff filed this class action lawsuit against Defendant Boiron, Inc. ("Boiron") on August 31, 2010 alleging that Boiron falsely advertised the ability of its homeopathic, over-the-counter drug, Children's Coldcalm, to relieve symptoms of the common cold.  After nearly three years of hotly contested litigation that featured published decisions denying Boiron's Motion for Judgment on the Pleadings and granting Plaintiff's Motion for Class Certification (*see Delarosa v. Boiron, Inc.*, 818 F.Supp.2d 1177 (C.D. Cal. 2011) and *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582 (C.D. Cal. 2011)); extensive fact and expert discovery, including written discovery, production and review of documents, exchange of expert reports, and lay and expert depositions; and settlement negotiations supervised and facilitated by Magistrate Judge Carla Woehrle, the parties finally reached a Settlement Agreement in April 2013.  Declaration of Scott J. Ferrell  ("Ferrell Decl.") ¶¶ 31-40.  Among other things, the Settlement Agreement offers complete relief to class members who make a valid claim, in the form of a refund in one of three amounts based upon the class member's level of proof for purchasing Children's Coldcalm (*see* Section IV.D, *infra*).  This result is a remarkable achievement for the class, especially in light of the risks Class Counsel faced in pursuing this case.  Indeed, this case represents the first certified class action lawsuit against a homeopathic drug company in the United States.  *See* Ferrell Decl. ¶ 27.

Plaintiff moved for preliminary approval of the Settlement Agreement on May 2, 2013 (Dkt. 314), which the Court granted on June 4, 2013.  (Dkt. 318.) Pursuant to the Settlement Agreement, and by way of this motion, Plaintiff now requests that the Court approve her application for attorneys' fees and costs, and an incentive award.  Plaintiff seeks $750,000 in attorneys' fees and costs and a $5,000 incentive award based upon the parties' agreement following a mediator's proposal by Judge Woehrle.  *See* Settlement Agreement §§ 8.1, 9.1 (attached as Ex. 1 to the Declaration of Daniel L. Warshaw ("Warshaw Decl.")); Warshaw Decl. ¶ 17.  As

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD

1   shown below, the requested fee award is justified by the work performed and results

2   obtained by Class Counsel in this case.  It constitutes less than half of Class

3   Counsel's lodestar (a multiplier of 0.36), and is more than reasonable given the

4   complex nature of this litigation, the time and resources expended by Class Counsel,

5   and the relief afforded by the Settlement Agreement.  The requested costs are part of

6   the total sum of Class Counsel's recovery and were reasonably incurred in the

7   ordinary course of prosecuting this case.  Finally, the requested incentive award is

8   routinely approved by federal courts in class action lawsuits and rewards Plaintiff

9   for her time and service to the class.  As detailed herein, Plaintiff's request for

10  attorneys' fees, costs, and incentive award comports with the relevant law and is

11  justified by the facts of this case.

12  **II.    FACTUAL AND PROCEDURAL HISTORY**

13        Plaintiff originally filed this class action lawsuit in Orange County Superior

14  Court.  Boiron removed the case to the Federal District Court, Central District of

15  California on October 14, 2010.  (Dkt. 1.)  The crux of Plaintiff's complaint was that

16  Boiron falsely advertised its homeopathic drug Children's Coldcalm as able to

17  relieve symptoms of the common cold, including "sneezing, runny nose, nasal

18  congestion, sinus pain, headaches, and sore throat."  Compl. ¶ 8.  Plaintiff alleged

19  that Boiron's claims of efficacy for Children's Coldcalm were false and misleading

20  because "Children's Coldcalm has no impact on the common cold."  *Id.* ¶ 9.

21        On January 14, 2011, Plaintiff filed her Motion for Class Certification.  (Dkt.

22  26.)  On January 21, 2011, Boiron filed a Motion for Judgment on the Pleadings,

23  which argued, among other things, that Plaintiff's claims were preempted by 21

24  U.S.C. § 379r of the federal Food, Drug, and Cosmetic Act ("FDCA"); that Court

25  intervention should be deferred pursuant to the equitable doctrines of abstention and

26  primary jurisdiction; and that Plaintiff failed to allege her claims with particularity.

27  (Dkt. 27.)

28        On July 25, 2011, the Court denied Boiron's Motion for Judgment on the

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1   Pleadings.  (Dkt. 75.)  The Court also denied Boiron's motion for certification of an

2   interlocutory appeal of this Order.  (Dkt. 98.)  On August 24, 2011, the Court

3   granted Plaintiff's Motion for Class Certification.  (Dkt. 76.)  As later clarified, the

4   Court certified both a Rule 23(b)(2) and 23(b)(3) class of plaintiffs defined as "all

5   persons who are domiciled or reside in California, who purchased Children's

6   Coldcalm in the State of California for personal use between August 31, 2006 and

7   the present, and were domiciled or resided in California at the time of purchase."

8   (Dkt. 193, Ex. A.)  The Court also appointed Plaintiff's counsel, Newport Trial

9   Group, as Class Counsel.  (Dkt. 76.)

10          Following class certification, Plaintiff retained additional Class Counsel,

11   Pearson, Simon & Warshaw, LLP, to assist in representing her and the Class.

12   Warshaw Decl. ¶ 4.  The parties conducted extensive discovery, including written

13   discovery, production and review of documents, exchange of expert reports, and lay

14   and expert depositions.  Ferrell Decl. ¶¶ 31-34.  The parties then filed cross-motions

15   for summary judgment, with Plaintiff filing her Motion on January 17, 2012 (Dkt.

16   111) and Boiron filing its Motion on February 6, 2012 (Dkt. 135).  Plaintiff argued

17   in her Motion for Summary Judgment, among other things, that there was no

18   genuine issue of material fact as to her CLRA and UCL claims because there was no

19   scientific evidence to support Boiron's claims of efficacy for Children's Coldcalm.

20   Boiron argued in its Motion for Summary Judgment, among other things, that

21   Plaintiff lacked standing to bring her claims.  On December 3, 2012, approximately

22   one month before trial, the Court agreed to postpone the trial and make a limited

23   ruling on Boiron's Motion for Summary Judgment relating only to Plaintiff's

24   standing to seek injunctive relief.  (Dkt. 295.)  On December 28, 2012, the Court

25   granted in part Boiron's Motion for Summary Judgment, finding that Plaintiff did

26   not have standing to seek injunctive relief on behalf of herself and the class.  (Dkt.

27   303.)

28          In November 2011, the parties attended a mediation session with former

1  California Supreme Court Justice Edward A. Panelli (Ret.).  Ferrell Decl. ¶ 35.  This

2  initial mediation did not result in a successful resolution of the case.  *Id.* ¶ 36.

3  However, the parties continued to engage in settlement talks throughout the balance

4  of this litigation.  *See id.* ¶¶ 36-40.  In June 2012, the Court referred this case to

5  Judge Woehrle for a settlement conference.  (Dkt. 196.)  Judge Woehrle was

6  instrumental in the negotiation and eventual resolution of this case.  The parties

7  attended three in-person mediations and held numerous telephonic conferences with

8  Judge Woehrle.  Ferrell Decl. ¶ 36.  Judge Woehrle helped the parties reach a

9  compromise on all major points of the settlement, and, after the parties agreed to the

10  settlement, Judge Woehrle made a mediator's proposal for attorneys' fees and costs.

11  Warshaw Decl. ¶ 17.  That proposal, for $750,000, was approved by both parties

12  and became part of the Settlement Agreement.  Warshaw Decl. Ex. 1.

13  Plaintiff moved for preliminary approval of the Settlement Agreement on

14  May 2, 2013.  (Dkt. 314.)  The next day, on May 3, 2013, this case was transferred

15  to the Honorable Beverly Reid O'Connell, sitting in this Court.  (Dkt. 315.)  This

16  Court held a preliminary approval hearing on May 31, 2013 and ordered the parties

17  to provide an Opt-Out form that would be available to potential class members on

18  the settlement website.  (Dkt. 317.)  The parties filed such an Opt-Out form on June

19  4, 2013 in response to the Court's request.  (Dkt. 319.)  That same day, the Court

20  granted Plaintiff's Motion for Preliminary Approval and set a schedule to effectuate

21  final approval of the settlement.  (Dkt. 318.)  Pursuant to that Order, Plaintiff now

22  brings her Motion for Attorneys' Fees, Costs, and Incentive Award.

23  **III.   CLASS COUNSEL'S LODESTAR IS REASONABLE AND JUSTIFIED**

24  **AND SHOULD BE APPROVED BY THE COURT**

25  **A.   California Law Controls Plaintiff's Fee Request**

26  "Federal courts are required to apply state law in diversity actions with regard

27  to the allowance or disallowance of attorney fees." *Bank of America v. Micheletti*

28  *Family Partnership*, No. C 08–2902 JSW, 2009 WL 1110830, at *2 (N.D. Cal. Feb.

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1   26, 2009) (quoting *Michael–Regan Co. v. Lindell*, 527 F.2d 653, 656 (9th Cir.

2   1975)); *Vizcaino v. Microsoft*, 290 F.3d 1043, 1047 (9th Cir. 2002).  A federal court

3   sitting in diversity applies the law of the forum state with respect to attorneys' fee

4   awards.  *See, e.g., Kona Enter., Inc. v. Estate of Bernice Pauahi Bishop*, 229 F.3d

5   877, 883 (9th Cir. 2000).  Plaintiff brought this class action lawsuit in California

6   pursuant to California law, and California law therefore governs Plaintiff's request

7   for attorneys' fees.

8       **B.**    **California Law Requires the Court to Apply the Lodestar Method**

9            **to Calculate Plaintiff's Reasonable Attorneys' Fees**

10       Under California law, Courts utilize the lodestar method in awarding

11   attorneys' fees in non-common fund settlements.  *Serrano v. Priest*, 20 Cal.3d 25,

12   34 (1977) ("*Serrano III*"); *Dunk v. Ford Motor Co.,* 48 Cal.App.4th 1794, 1809-11

13   (1996) (rejecting the use of the common fund approach in a non-common fund

14   settlement); *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 941-42

15   (9th Cir. 2011) ("*Bluetooth*").   Under the lodestar method, Class Counsel's lodestar

16   serves as the "touchstone" for the fee award.  *See Vo v. Las Virgines Mun. Water*

17   *Dist.*, 79 Cal.App.4th 440, 445-46 (2000).  The court may then adjust the lodestar

18   amount based on a number of factors, including: "(1) the novelty and difficulty of

19   the questions involved, (2) the skill displayed in presenting them, (3) the extent to

20   which the nature of the litigation precluded other employment by the attorneys,

21   [and] (4) the contingent nature of the fee award."  *Ketchum v. Moses,* 24 Cal.4th

22   1122, 1132 (2001).  Other relevant factors include "the time limitations imposed by

23   the litigation, the amount at stake, and the result obtained by counsel."  *City of*

24   *Oakland v. Oakland Raiders*, 203 Cal.App.3d 78, 83 (1988); *Bluetooth*, 654 F.3d at

25   942.

26       As detailed below, Class Counsel's request for attorneys' fees and costs is

27   only 0.36 of their reasonable and compensable lodestar of $1,852,515.  Class

28   Counsel's request is made pursuant to the agreement of the parties, which followed

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

a mediator's proposal by Judge Woehrle, and is memorialized in the Settlement Agreement.  The request is supported by the novelty and difficulty of this litigation, Class Counsel's skillful handling of the difficult factual and evidentiary issues presented, the significant contingent risks in this case, and the quality of the result achieved for the class.

C. **Class Counsel Incurred a Reasonable Lodestar in Order to Successfully Prosecute This Case on Behalf of the Class Members**

The first step employed in awarding fees under the lodestar method is to calculate the lodestar amount, which is the number of hours reasonably performed at a reasonable hourly rate.  *Vo*, 79 Cal.App.4th at 440.  Class Counsel's lodestar can be calculated in one of two ways: "(1) by applying the attorneys' current rates to all hours billed during the course of the litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement."  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994).

As of the date of this filing, Class Counsel spent a total of 3,890.3 hours working on this case, and incurred a combined lodestar of $1,852,515 based on their historical hourly rates.  A breakdown of these fees and hours between the law firms is as follows:

| Class Counsel | Hours | Lodestar |
| --- | --- | --- |
| Newport Trial Group | 3,037.1 | $1,400,460 |
| Pearson, Simon & Warshaw, LLP | 853.2 | $452,055 |
| **Total** | **3,890.3** | **$1,852,515** |

The specific work performed, hours, and lodestar for each of the law firms that worked on this case is set forth in the concurrently filed declarations of Class

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1   Counsel.  *See* Ferrell Decl. ¶¶ 1-42; Warshaw Decl. ¶¶ 4-29.  Class Counsel will

2   spend additional time drafting and revising Plaintiff's Motion for Final Approval of

3   the Settlement, responding to Class Member objections, and preparing for and

4   attending the Fairness Hearing on November 4, 2013.  *See* Warshaw Decl. ¶ 25.  For

5   the reasons detailed below, Class Counsel's lodestar was reasonably and necessarily

6   incurred in order to secure a successful result on behalf of the class members.

7          **1.**       **Class Counsel's Lodestar Is Reasonable and Compensable**

8       "Under the lodestar method, a party who qualifies for a fee should recover for

9   all hours reasonably spent unless special circumstances would render the award

10  unjust."  *Vo*, 79 Cal.App.4th at 446; *see also Weeks v. Baker & McKenzie*, 63

11  Cal.App.4th 1128, 1175 (1998) ("an attorney who takes on [a complex] case can

12  anticipate receiving full compensation for every hour spent litigating a claim against

13  even the most polemic opponent"); *Ketchum,* 24 Cal.4th at 1132.  Compensable

14  activities under the lodestar method include both pre-litigation activities (such as

15  interviewing the client, investigating the facts, researching the law, and preparing

16  the initial pleading) and litigation activities (such as conducting discovery,

17  conferring with clients, drafting pleadings, making court appearances, travel time,

18  and settlement negotiations).  *See Webb v. Board of Edu.*, 471 U.S. 234, 243 (1985);

19  *Stokus v. Marsh*, 217 Cal.App.3d 647, 655-56 (1990).  A review of billing records is

20  not necessary for awarding attorneys' fees under the lodestar method.  *In re Sutter*

21  *Health Uninsured Pricing Cases*, 171 Cal.App.4th 495, 511-12 (2009) ("We see no

22  reason why [the court] could not accept the declarations of counsel attesting to the

23  hours worked, particularly as he was in the best position to verify those claims by

24  reference to the various proceedings in the case."); *Wershba v. Apple Computer,*

25  *Inc.,* 91 Cal.App.4th 224, 254-55 (2001) (allowing fee awards in the absence of

26  detailed time sheets).

27      Here, Class Counsel have supported and provided the evidentiary basis for

28  their lodestar in the comprehensive declarations of Scott J. Ferrell and Daniel L.

*PEARSON, SIMON & WARSHAW, LLP*
*15165 VENTURA BOULEVARD, SUITE 400*
*SHERMAN OAKS, CALIFORNIA 91403*

Warshaw.  These declarations detail the amount of work that was necessary in order to secure a successful result on behalf of the class members in this litigation, including: (1) pre-litigation research and investigation; (2) researching, drafting, and preparing Plaintiff's Motion for Class Certification; (3) opposing Boiron's Motion for Judgment on the Pleadings; (4) conducting extensive discovery, including written discovery, production and review of documents, exchange of expert reports, and lay and expert depositions; (5) researching, drafting, and preparing Plaintiff's Motion for Summary Judgment; (6) opposing Boiron's Motion for Summary Judgment or Summary Adjudication; (7) settlement-related activities, including preparing for and holding multiple in-person and telephonic settlement conferences with Judge Woehrle; (8) trial preparation, including collecting discovery, developing a trial plan, and filing multiple motions in limine; and (9) obtaining Court approval of the Settlement Agreement.  *See* Ferrell Decl. ¶¶ 1-42; Warshaw Decl. ¶¶ 4-29.

Newport Trial Group ("NTG") spent considerable time researching and investigating this case before filing Plaintiff's Complaint.  Ferrell Decl. ¶¶ 3-4. Within a matter of *three months* following Boiron's removal of the Complaint, NTG worked tirelessly in preparing Plaintiff's Motion for Class Certification, which it filed on January 14, 2011.  (Dkt. 26.)  A week later, on January 21, 2011, Boiron filed a Motion for Judgment on the Pleadings, raising complex issues of federal preemption and pleading arguments.  (Dkt. 27.)  Boiron also filed an *ex parte* Application to Strike Plaintiff's Motion for Class Certification on January 24, 2011. (Dkt. 31.)  After the parties fully briefed Plaintiff's Motion for Class Certification and Boiron's Motion for Judgment on the Pleadings, the Court issued an Order requesting supplemental briefing on the applicability of 21 U.S.C. § 379r(d)(1) of the FDCA to this case.  (Dkt. 58.)  The parties' supplemental briefs, together with their earlier briefing, resulted in two published decisions: (1) denying Boiron's Motion for Judgment on the Pleadings, *see Delarosa v. Boiron, Inc.*, 818 F.Supp.2d

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1177 (C.D. Cal. 2011); and (2) granting Plaintiff's Motion for Class Certification (and denying Boiron's Motion to Strike), *see Delarosa v. Boiron, Inc.*, 275 F.R.D. 582 (C.D. Cal. 2011). *See also* Ferrell Decl. ¶¶ 5-27.

Following the Court's grant of class certification, NTG conducted extensive discovery. This included propounding and responding to multiple sets of written discovery; reviewing thousands of pages of documents relating to Boiron's production, distribution, and labeling of Children's Coldcalm; producing expert reports from two witnesses regarding homeopathy and the active ingredients in Children's Coldcalm; taking the depositions of (1) Boiron's corporate designee and (2) its sole expert regarding the efficacy of Children's Coldcalm; and defending Plaintiff's deposition. *See* Ferrell Decl. ¶¶ 31-34. The parties then filed cross-motions for summary judgment. (Dkts. 111 and 135.) NTG researched, drafted, and prepared Plaintiff's Motion for Summary Judgment. Before holding a hearing on the parties' motions, the Court referred the case to Judge Woehrle for a settlement conference on June 5, 2012. (Dkt. 196.) NTG prepared a settlement conference statement and attended the settlement conference on June 20, 2012. *See* Ferrell Decl. ¶ 36. NTG also attended two additional in-person mediations and held numerous telephonic conferences with Judge Woehrle and co-counsel. *See id.* ¶¶ 36-39; Warshaw Decl. ¶ 15.

During the course of the parties' settlement negotiations, the parties entered into a stipulation to reset the case schedule. (Dkt. 256.) The Court granted the parties' stipulation and set a pre-trial and trial schedule on August 30, 2012. (Dkt. 258.) In compliance with this schedule, NTG began preparing for trial by collecting discovery and developing a trial plan with co-counsel. Warshaw Decl. ¶ 14. NTG also filed multiple motions in limine, opposed Boiron's motions in limine, and filed a memorandum of contentions of fact and law. *See generally* Ferrell Decl. ¶ 1. NTG was ready and willing to proceed to trial had the Settlement Agreement not been reached.

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1    Pearson, Simon & Warshaw, LLP ("PSW") began to work collaboratively

2 with NTG on this case following class certification.  Warshaw Decl. ¶ 4.  PSW's

3 focus and efforts were on assisting NTG achieve a favorable resolution for the class.

4 PSW prepared the mediation brief and attended the initial mediation session with the

5 Honorable Justice Panelli (Ret.) in November 2011.  *Id.* ¶ 5.  After this initial

6 mediation session failed to produce a settlement, PSW worked side-by-side with

7 NTG in representing Plaintiff and the class in both litigation and settlement-related

8 activities.  PSW worked with defense counsel to prepare a joint plan of

9 dissemination of notice to the class, drafted the notice documents, and oversaw

10 distribution of the notice.  *Id.* ¶ 6.  PSW also participated in post-class certification

11 discovery that was necessary to prepare this case for summary judgment and trial.

12 This process involved the exchange of substantive merits discovery, multiple meet

13 and confer efforts, and motions to compel that resulted in the production of

14 thousands of pages of documents by Boiron.  *Id.* ¶¶ 7-9.  PSW assisted in the

15 intensive and detailed briefing of the parties' cross-motions for summary judgment,

16 and prepared for and attended the hearing on those motions.  *Id.* ¶¶ 10-12.  PSW

17 also actively engaged in pre-trial proceedings with NTG, including developing a

18 trial plan, preparing Plaintiff's witnesses and exhibits for trial, filing and opposing

19 multiple motions in limine, and preparing Plaintiff's memorandum of contentions of

20 fact and law.  *Id.* ¶¶ 13-14.

21    PSW's efforts were vital to reaching a settlement on behalf of the class.  PSW

22 spent many hours carefully negotiating the Settlement Agreement with opposing

23 counsel.  As referenced above, these negotiations included multiple in-person and

24 telephonic conferences with Judge Woehrle, opposing counsel, and co-counsel.  The

25 negotiations spanned the course of nearly eighteen months until the parties finally

26 reached the Settlement Agreement in April 2013.  *Id.* ¶ 16.  PSW also researched,

27 drafted, and prepared Plaintiff's Motion for Preliminary Approval and attended the

28 hearing on Plaintiff's motion.  *Id.* ¶ 20.

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1    Together, Class Counsel litigated this case vigorously on behalf of Plaintiff

2  and the class.  Class Counsel defeated an attack on the pleadings featuring complex

3  and novel legal arguments, obtained class certification, and secured preliminary

4  approval of the Settlement Agreement.  Class Counsel also designed and

5  implemented a multifaceted notice plan that provides class members with notice of

6  the settlement via print and internet publication.  Class Counsel will continue to

7  vigilantly represent the class in order to secure final approval of the Settlement

8  Agreement.  Each hour expended by Class Counsel in this case has ultimately

9  benefitted the class members, and Class Counsel's lodestar amount is reasonable

10  and compensable.

11              **2.      Class Counsel's Hourly Rates Are Reasonable**

12    The test for the reasonableness of an attorney's hourly rate is based on "the

13  rate prevailing in the community for similar work performed by attorneys of

14  comparable skill, experience, and reputation."  *Chalmers v. City of Los Angeles,* 796

15  F.2d 1205, 1210-11 (9th Cir. 1986).  In performing this analysis, courts look to the

16  experience and reputation of class counsel, the complexity of the issues involved,

17  the geographic market in which the case is litigated, and other factors affecting the

18  litigation.  *See, e.g., City of Oakland*, 203 Cal.App.3d 78, 82 (1998) (affirming a

19  trial court's approval of an hourly rate that falls in line with the rates charged by

20  "top law firms in the Bay Area"); *Children's Hosp. & Med. Ctr. v. Bunt*, 97

21  Cal.4th 740, 783 (2002) (approving hourly rates that were "within the range of

22  reasonable rates charged by and judicially awarded comparable attorneys for

23  comparable work").

24    The attorney declarations and supporting exhibits filed herein establish the

25  basis and calculation for the hourly rates of the attorneys and paralegals who worked

26  on this case.  Both of the firms involved in this litigation have experience handling

27  class actions and complex litigation.  *See* Ferrell Decl. ¶¶ 49-56; Warshaw Decl. ¶¶

28  30-34.  This experience was invaluable in successfully adjudicating this case and

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1   supports the hourly rates charged by Class Counsel.  Class Counsel billed this case

2   at their usual and customary hourly billing rates.  Ferrell Decl. ¶ 46; Warshaw Decl.

3   ¶ 31.  Accordingly, Class Counsel have established that their lodestar is reasonable

4   and justified.

5   **IV.**   **THE REDUCED ATTORNEYS' FEES REQUESTED ARE**

6         **REASONABLE**

7       As stated above, once the Court calculates the lodestar, it can adjust it based

8   on the following factors: "(1) the novelty and difficulty of the questions involved,

9   (2) the skill displayed in presenting them, (3) the extent to which the nature of the

10   litigation precluded other employment by the attorneys, [and] (4) the contingent

11   nature of the fee award."  *Ketchum*, 24 Cal.4th at 1132.  Other relevant factors

12   include "the time limitations imposed by the litigation, the amount at stake, and the

13   result obtained by counsel."  *Oakland*, 203 Cal.App.3d at 83; *Bluetooth*, 654 F.3d at

14   942.  There is no rigid formula, and each factor should be considered only where

15   appropriate.  *See Serrano III*, 20 Cal.3d at 49; *The People ex rel. Dep't. of Transp. v.*

16   *Yuki*, 31 Cal.App.4th 1754, 1771 (1995).

17       Here, the above factors undoubtedly support an attorneys' fee award utilizing

18   a multiplier of 1.0 or higher.  However, pursuant to Judge Woehrle's proposal

19   adopted by the parties, Plaintiff is seeking an attorneys' fee award of $670,790.59,

20   which represents only a 0.36 multiplier of Class Counsel's combined $1,852,515

21   lodestar.  As shown below, the requested fee award is more than justified by Class

22   Counsel's skillful handling of the novel and difficult issues in this case and the

23   results achieved.

24       **A.**   **The Fee Requested Is Supported by the Complexity of This Case**

25       This class action lawsuit challenged on-label claims of efficacy by Boiron for

26   its homeopathic, over-the-counter drug, Children's Coldcalm.  Much of the early

27   motion practice in this case focused on novel issues relating to the federal

28   government's regulation of homeopathic drugs and whether Boiron's efficacy

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1    claims were covered by the FDCA.  In fact, after the parties had fully briefed

2    Boiron's Motion for Judgment on the Pleadings, the Court ordered the parties to

3    provide supplemental briefing on the applicability of 21 U.S.C. § 379r(d)(1) to this

4    case.  (Dkt. 58.)  These complex and novel issues relating to federal preemption of

5    homeopathic drugs presented challenges in this case that rarely arise in consumer

6    misrepresentation class actions.

7          In order to prevail on the majority of her claims, Plaintiff would have had to

8    demonstrate that Boiron's advertising of Children's Coldcalm was likely to mislead

9    a reasonable consumer.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th

10   Cir. 2008).  Plaintiff argued that Boiron's advertising of Children's Coldcalm was

11   likely to mislead a reasonable consumer because it promised relief from cold

12   symptoms but did not provide such relief.  The basis for Plaintiff's argument was

13   that the preparation and dilution of Children's Coldcalm was contrary to accepted

14   scientific principles and had never been shown to be an effective treatment.

15   Defendant countered—and would likely have countered at trial—that Plaintiff's

16   claim was a "lack of substantiation" argument, which has been found insufficient

17   under California consumer protection law.  *See, e.g.*, *Chavez v. Nestle USA, Inc.*,

18   No. CV 09-9192, 2011 WL 2150128, at *5-6 (C.D. Cal. May 19, 2011); *Fraker v.*

19   *Bayer Corp.*, No. CV F 08-1564, 2009 WL 5865678, at *8-9 (E.D. Cal. Oct. 6,

20   2009).  These arguments placed a premium on expert analysis, as both parties

21   proffered experts with opposing views on the utility of homeopathy and Children's

22   Coldcalm in particular.

23   **B.**    **Class Counsel Handled the Difficult Issues Presented in This**

24           **Litigation with Tremendous Skill and Expertise**

25          Class Counsel overcame these significant legal and factual challenges with

26   tremendous skill and expertise throughout this litigation.  Class Counsel defeated

27   Boiron's Motion for Judgment on the Pleadings, resulting in a published opinion.

28   *See Delarosa v. Boiron, Inc.*, 818 F.Supp.2d 1177 (C.D. Cal. 2011).  Class Counsel

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1   also obtained class certification in another published opinion.  *See Delarosa v.*

2   *Boiron, Inc.*, 275 F.R.D. 582 (C.D. Cal. 2011).  Certification of the class in this case

3   was especially noteworthy, since it was the *first certified class against a*

4   *homeopathic drug company in the United States*.  Ferrell Decl. ¶ 27 (emphasis

5   added).  Following class certification, Class Counsel conducted extensive written

6   and oral discovery that enabled them to continue prosecuting this case against

7   Boiron while also engaging in substantive settlement negotiations.  Class Counsel

8   prepared for and was ready to proceed to trial in the event a settlement was not

9   reached.  Class Counsel's hard-fought negotiations led to the adoption of the

10  Settlement Agreement on the eve of trial and represents a tremendous achievement

11  for the class.  Their expert handling of the difficult issues presented in this litigation

12  resulted in a significant settlement that provides substantial relief to the class

13  members.

14      **C.      The Attorneys' Fee Award Is Reasonable in Light of the**

15              **Contingent Risks in This Case**

16          The contingent risk of receiving little or no recovery is also a major factor in

17  considering an award of attorneys' fees.  *See, e.g., In re Warner Comm's Sec. Litig.*,

18  618 F.Supp. 735, 747-49 (S.D.N.Y. 1985); *Ketchum*, 24 Cal.4th at 1128, 1132 ("A

19  contingent fee contract, since it involves a gamble on the result, may properly

20  provide for a larger compensation than would otherwise be reasonable.").

21          Although contingent risks exist in every class action, these risks were

22  especially prevalent in this case.  This lawsuit was not ripped from the headlines, it

23  did not piggyback on a government investigation, and it had no guarantee of

24  success.  Rather, Class Counsel took on the unique challenge of attempting to prove

25  that the broadly utilized and widely distributed homeopathic drug sold by Boiron

26  was ineffective and misleading.  From the inception, Boiron maintained that its

27  efficacy claims for Children's Coldcalm were not false or misleading.  Boiron

28  argued vehemently that Children's Coldcalm was an effective product and levied

1   multiple attacks against Plaintiff's claims at the pleading stage, at class certification,

2   during discovery, and at summary judgment.  In order to overcome this resistance,

3   Class Counsel had to assume the risk of failure, and spend a significant amount of

4   time, money, and resources litigating this case without any guaranty of success or

5   reimbursement.  Class Counsel's willingness to take on these significant contingent

6   risks made the settlement possible and supports Plaintiff's  request for attorneys'

7   fees.

8       **D.    <u>The Fee Requested Is Justified by the Results Obtained by Class</u>**

9           **<u>Counsel</u>**

10          Courts employing the lodestar method can also consider the results obtained

11  in determining the appropriate attorneys' fee award.  *See Bluetooth*, 654 F.3d at 942.

12  In a non-common fund settlement, this analysis is not predicated on paying Class

13  Counsel a percentage of the amount of benefits ultimately claimed by the class

14  members.  *Lealao v. Beneficial California, Inc.* 82 Cal.App.4th 19, 26 (2000)

15  ("[W]here plaintiffs' efforts have not effected the creation or preservation of an

16  identifiable 'fund' of money out of which they seek to recover their attorney fees,

17  the 'common fund' exception is inapplicable.").  Rather, the appropriate measure of

18  analysis of the results obtained should take into account the quality of the benefits

19  obtained and the degree of success by the plaintiff in the litigation.  *See Bluetooth*,

20  654 F.3d at 942; *Krumme v. Mercury Ins. Co.*, 123 Cal.App.4th 924, 947 (2004)

21  (awarding a 1.5 multiplier in an action where plaintiff obtained only injunctive relief

22  and failed to obtain restitutionary recovery).

23          An analysis of the results achieved strongly favors granting Plaintiff's

24  requested attorneys' fee award.  The Settlement Agreement provides comprehensive

25  relief in the form of monetary and injunctive relief.  First, with respect to monetary

26  relief, the Settlement Agreement allows all class members who submit a valid claim

27  to receive a refund in one of three amounts based upon the class member's level of

28  proof for purchasing Children's Coldcalm.  Class members with a receipt will

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

15

1  receive a full refund of their purchase price; those without a receipt but with the

2  Children's Coldcalm package will receive $12.99 per purchase without any cap on

3  their recovery[1]; and those with no proof of purchase but who swear or affirm that

4  they purchased Children's Coldcalm during the Class Period will receive $8.00 per

5  purchase, with a cap of $16.00 per household.  Settlement Agreement § 4.2.3.  In

6  addition to this relief, Boiron has agreed to pay, pursuant to the CLRA, $1,000 in

7  statutory damages to the class, of which each Claimant will receive a *pro rata* share.

8  *Id.* § 4.3.

9  Second, with respect to injunctive relief, the Settlement Agreement requires

10  Boiron to make two changes to the label of Children's Coldcalm: (1) it must add a

11  disclaimer that the Federal Drug Administration has not evaluated the "uses" of

12  Children's Coldcalm; and (2) it must add language regarding the dilution of

13  Children's Coldcalm's ingredients.  *Id.* §§ 4.1.2, 4.1.3.  The language regarding

14  dilution will direct customers to a modified Homeopathic Dilution Page on Boiron's

15  website that will contain detailed information relating to homeopathy and the

16  preparation of Children's Coldcalm.  *Id.* § 4.1.4.

17  The adequacy of the results achieved and the benefits obtained on behalf of

18  the class further support granting Class Counsel's requested attorneys' fees in this

19  case.

20  **V.      CLASS COUNSEL SHOULD BE REIMBURSED THEIR COSTS**

21  In addition to attorneys' fees, attorneys in a class action may be reimbursed

22  for costs incurred "in the ordinary course of prosecuting [a] case."  *X-Ray Film*

---

24  [1] As explained in Plaintiff's Motion for Preliminary Approval, this full and complete

25  remedy is a significant victory for class members since Plaintiff's expert determined
    that the average retail price of Children's Coldcalm during the Class Period was

26  $12.02.  *See* Supp. Report of Patrick F. Kennedy, Ph.D (dated Sept. 21, 2012), filed

27  as Exhibit C to the Declaration of Scott J. Ferrell in Support of Plaintiff's Motion for
    Preliminary Approval.  (Dkt. 314-1.)

28

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  *Antitrust Litig.*, No. 960886, 1998 WL 1031494, at *11 (Cal. Super. Ct. Oct. 22,

2  1998) (awarding class counsel $29,051.40 in litigation costs); *In re Businessland*

3  *Sec. Litig.*, No. 09-CV-20476, 1991 WL 427887, at *3 (N.D. Cal. June 14, 1991)

4  (awarding class counsel $90,574.78 in litigation costs in addition to attorneys' fees).

5  Reasonable reimbursable litigation costs include, but are not limited to, the costs of

6  document production, experts and consultants, depositions, notice, and travel

7  expenses.  *See Mills v. Electric Auto-Lite Co.* , 396 U.S. 375, 391-92 (1970) ("To

8  allow the others to obtain full benefit from the plaintiff's efforts without

9  contributing equally to the litigation expenses would be to enrich the others unjustly

10  at the plaintiff's expense.")  Here, Class Counsel have incurred $79,209.41 in

11  litigation costs during the ordinary course of this litigation.  *See* Warshaw Decl. ¶

12  39.  These expenses include expert and consultant fees, deposition related expenses,

13  and travel expenses; have been incurred in the normal course of business; and were

14  essential to the successful prosecution of this class action lawsuit.  *See id.*  Under the

15  Settlement Agreement—which includes a lump sum of $750,000 for attorneys' fees

16  and costs—the costs are simply a portion of Class Counsel's total recovery.  Class

17  Counsel respectfully request the recovery of these litigation costs.

18  ## VI.    THE COURT SHOULD AWARD AN INCENTIVE AWARD TO THE

19  ##          CLASS REPRESENTATIVE

20       Class representative incentive awards are intended to compensate the named

21  plaintiff for work done on behalf of the class, to make up for financial or

22  reputational risk undertaken in bringing the action, and, sometimes, to recognize her

23  willingness to act as a private attorney general.  *Rodriguez v. West Publishing Corp.*,

24  563 F.3d 948, 958-59 (9th Cir. 2009).  Incentive awards are almost always included

25  in class action settlements and, "[i]n general, courts have found that $5,000

26  incentive payments are reasonable."  *Hopson v. Hanesbrands, Inc.*, No. 08–CV–

27  0844–EDL, 2009 WL 928133, * 10 (N.D. Cal. Apr. 3, 2009) (citing *In re Mego Fin.*

28  *Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)); *In re SmithKline Beckman*

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1 *Corp.*, 751 F.Supp. 525, 535 (E.D. Pa. 1990); *Alberto v. GMRI, Inc.*, No. 07-CV-

2 1895, 2008 WL 2561106, *11–13 (E.D. Cal. June 24, 2008)).

3       Here, Plaintiff is requesting an incentive award of $5,000.  This requested

4 award comports with precedent and is justified by the time and effort Plaintiff has

5 dedicated to this case, which included having her deposition taken, filing

6 declarations in support of various motions, and participating in settlement

7 conferences.  *See* Declaration of Gina Delarosa ¶¶ 4-5.  The requested award is

8 further supported by the sacrifice Plaintiff had to make in serving as the class

9 representative, the reputational risk of associating her name with a class action

10 against a major international corporation, and her willingness to act as a private

11 attorney general on behalf of the class.  *See id.*

12 **VII.   <u>CONCLUSION</u>**

13       Based on the foregoing, Plaintiff respectfully requests an award of attorneys'

14 fees, costs, and incentive award in the amounts set forth above.

15

16 DATED: August 19, 2013          **PEARSON, SIMON & WARSHAW, LLP**

17                                  CLIFFORD H. PEARSON
                                     DANIEL L. WARSHAW

18                                  BOBBY POUYA

19                                  **NEWPORT TRIAL GROUP**

20                                  SCOTT J. FERRELL

21                                  JAMES B. HARDIN
                                     STEVEN R. TELLES

22                                  RYAN M. FERRELL

23

24                                  By:  _____*/s/ Daniel L. Warshaw*_____

25                                        DANIEL L. WARSHAW
                                     Attorneys for Plaintiff and the Class

26

27

28

PEARSON, SIMON & WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403